[L. A. No. 3618. In Bank.—June 11, 1917.]

ROBERT H. GAYLORD, Respondent, v. CITY OF PASADENA et al., Appellants.

MUNICIPAL CORPORATIONS—DETERMINATION OF UNSAFETY OF ELECTRICAL INSTALLATION—DELEGATION OF POWER TO CITY OFFICIAL.—A municipal ordinance delegating to the city electrician the power of determining whether an electrical installation in a building is dangerous to life or property, without defining what conditions he must find to exist before he determines that the installation is unsafe or dangerous, is not void as unwarrantedly conferring upon that official

judicial or legislative powers, or because its terms are either indefinite, arbitrary, or oppressive.

ID.—ENJOINING ENFORCEMENT OF ORDINANCE — REVIEW BY COURT OF FINDING THAT INSTALLATION IS UNSAFE.—A court of equity, at the instance of a property owner, may review the determination of the city electrician that the installation is unsafe, and upon finding that it is safe, may enjoin the city authorities from enforcing the ordinance upon the owner's refusal to comply with the directions of the city electrician touching changes and repairs.

ID.—APPEAL TO CITY COUNCIL—FAILURE OF PROPERTY OWNER TO TAKE.— The failure of the property owner to avail himself of a right to appeal to the city council from the determination of the city electrician, which right had been accorded by an amendment to the ordinance, does not deprive him of his right to resort to the courts for relief, where he was not advised of the amendment at such a time and under such circumstances as called upon him to avail himself of the permissive appeal to the council.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

John Munger, City Attorney, and J. H. Howard, Deputy City Attorney, for Appellants.

Porter & Sutton, for Respondent.

Percy V. Long, and Maurice T. Dooling, Jr., *Amici Curiae.*

HENSHAW, J.—The city of Pasadena adopted an ordinance by virtue of the unquestioned power so to do conferred by its charter. It dealt with electricity, electric wires, and electrical appliances to be installed in buildings within the city. In recognition of the fact that many buildings were already equipped with such wires and appliances, it provided that whenever the city electrician should find any electrical wiring, connections, fixtures, appliances, apparatus, machinery, equipment, or work installed which was dangerous to life or property, he should in writing notify the owner to cease using electrical current in or through such electrical wiring, and to have the indicated defects repaired within a reasonable time, not exceeding ten days. This notice to the owner was required to be in writing and to specify the particulars in which the electrical installation was defective, and

further to specify the necessary steps to be taken to remedy the defects. An appeal was provided from this determination of the city electrician to the city council, and if no appeal was taken, or if the city council upheld the determination of its city electrician, then within five days after the expiration of the time for appeal, or within five days after the council's ruling refusing to sustain the appeal, if the repairs were not made by the owner, the city electrician was to serve written notice upon the firm or corporation furnishing such electrical current to cease supplying it until such defects had been corrected. The provision touching the right to appeal · from the ruling of the city electrician to the city council was added to the original ordinance by amendment, and it was before the trial court at the time of its hearing of this controversy.

This action was brought by a disaffected property owner upon whom such a notice had been served. He averred that the electric wiring in his house was in a good, safe, and proper condition, and that the ordinance was void, and he prayed an injunction restraining the city authorities, who are the defendants herein, from enforcing the ordinance against him. The court found the electrical apparatus in plaintiff's residence to be in a safe and proper condition and not dangerous to life or property. It found the ordinance under consideration to be void "in so far as it purports to confer arbitrary power upon the city electrician to determine in the first instance whether or not any electric wiring, connections, fixtures, etc., are dangerous to life and property." As matter of law it concluded that the sections of the ordinance conferring this power were void, and granted plaintiff a permanent injunction as prayed for.

We do not understand that respondent contends or that the court held that if the municipal council of the city of Pasadena had gone in a body and had inspected the premises, and from this inspection had determined that the indicated defects existed, or even if sitting in a *quasi*-judicial capacity they had taken the evidence of their city electrician and upon that had found that these defects existed, and had thereupon directly served upon the property owner the notice which the city electrician served upon him, any violence would have been done to the law or to respondent's constitutional rights. The unwarranted, arbitrary, and illegal exercise of power,

then, is found to lie in the fact that the city electrician was permitted, as the authorized agent of the city council, to pass his judgment and make his determination upon the question, and further, because in passing his judgment and in making his determination he was inadequately controlled by specifications limiting his power, those specifications not particularizing what he must find before he could declare that the electrical appliances were dangerous to life or property, but leaving to the exercise of his discretion the determination whether or not in a given instance they were so dangerous to life or property.

This fairly presents the controversy. In support of the court's judgment reliance is placed upon *In re Dart,* 172 Cal. 47, [L. R. A. 1916D, 905, 155 Pac. 63]. But the broad distinction between the two cases will become at once apparent when it is pointed out that the Dart case dealt with the control of charitable institutions and charities, and the decision of this court went not alone to the unreasonable and arbitrary grant of power conferred by ordinance upon a charity commission, but to the fundamental proposition that the city council of Los Angeles had empowered this board to do acts which the city council itself, the source of power, could not legally do; while here we have manifestly the case of acts which the city council of Pasadena could legally do, and the only objection to the ordinance is that the council has conferred a certain power of direction and control upon one of its agents, which power of direction and control it is declared is arbitrary and unreasonable.

Even a casual observer of governmental growth and development must have observed the ever-increasing multiplicity and complexity of administrative affairs—national, state, and municipal—and even the occasional reader of the law must have perceived that from necessity, if for no better grounded reason, it has become increasingly imperative that many *quasi*-legislative and *quasi*-judicial functions, which in smaller communities and under more primitive conditions were performed directly by the legislative or judicial branches of the government, are intrusted to departments, boards, commissions, and agents. No sound objection can longer be successfully advanced to this growing method of transacting public business. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense,

makes for the safety of the republic, and is thus sanctioned by the highest law. For, as the supreme court of the United States declares: "Indeed, it is not too much to say that a denial to Congress of the right, under the Constitution, to delegate the power to determine some fact or the state of things upon which the enforcement of its enactment depends, would be 'to stop the wheels of government' and bring about confusion, if not paralysis, in the conduct of the public business." (*Union Bridge Co. v. United States*, 204 U. S. 364, [51 L. Ed. 523, 27 Sup. Ct. Rep. 367].)

Since, as has been said, the city council of Pasadena would have in any proper case the unquestioned right under the exercise of its police powers to compel a householder to make good the electric appliances upon his premises, the present problem narrows itself down to a determination whether or not in the method which was adopted they conferred upon a subordinate officer or agent unreasonable powers, and herein the controlling consideration is not that the power conferred may be unreasonably or oppressively exercised, for every presumption is that it will be honestly and reasonably exercised. "Laws are not made upon the theory of the total depravity of those who are elected to administer them; and the presumption is that municipal officers will not use these small powers villainously and for purposes of oppression and mischief." (*In re Flaherty*, 105 Cal. 562, [27 L. R. A. 529, 38 Pac. 981]; *Ex parte McManus*, 151 Cal. 331, [90 Pac. 702]; *Rode v. Siebe*, 119 Cal. 520, [39 L. R. A. 342, 51 Pac. 869].) Therefore, eliminating the possibility of an unjust and oppressive use of the power against which the courts will interfere (*New York v. Van de Carr*, 199 U. S. 552, [50 L. Ed. 305, 26 Sup. Ct. Rep. 144]; *Yick Wo v. Hopkins*, 118 U. S. 356, [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064]), the question is: Can it be justly said that this delegated power is either in its terms illegally oppressive or in its terms lacks definiteness, thus allowing too great a play to the discretion of the city electrician? That an official charged with such a duty as this may, and indeed must, exercise discretion precisely as he may or must exercise judgment is, of course, true, but this fact in no way militates against the validity of the law, for, as said in the Van de Carr case, *supra*, "the authority sustained is the grant of power to issue or withhold permits in the honest exercise of a reasonable discretion." A brief review

of a few of the many cases will illustrate the nature and extent of powers exercised by inferior tribunals and officers whose grants of power have been upheld. The most familiar to which no citation of authority is necessary are the extraordinary grants of power, without express constitutional authority, by Congress and state legislatures to interstate commerce and to railroad commissions. While recognizing that the Congress of the United States is the sole law-making power for all of its territory, the supreme court of the United States has held that the creation by Congress of a commission and the vesting in that commission of power to maintain a government in the Philippine Islands and to make necessary laws for that purpose was not an unconstitutional surrender by Congress of its legislative powers or an unconstitutional transference of those powers to an inferior board. (*Dorr* v. *United States,* 195 U. S. 138, [1 Ann. Cas. 697, 49 L. Ed. 128, 24 Sup. Ct. Rep. 808] ; *United States* v. *Heinszen & Co.,* 206 U. S. 370, [11 Ann. Cas. 688, 51 L. Ed. 1098, 27 Sup. Ct. Rep. 742].) A law of the state of Michigan which created a registration board of physicians empowered the board to say what physicians were duly and legally registered and to forbid the practice of the profession to those not duly registered was not, as held by the supreme court of the United States, an illegal nor unreasonable delegation of power, the court further saying that due process of law is not necessarily judicial process and that the right of appeal is not essential to due process of law. (*Reetz* v. *Michigan,* 188 U. S. 505, [47 L. Ed. 563, 23 Sup. Ct. Rep. 390].) An act of Congress investing the Secretary of War and his subordinates with power to determine and declare whether a bridge over navigable waters is an unreasonable obstruction to navigation and to order its alteration or removal is a reasonable delegation of power, since Congress may clothe an executive officer with power to ascertain whether certain specific facts exist and thereupon to act in a prescribed manner without in so doing granting in an unconstitutional sense legislative or judicial powers to such an officer. (*Monongahela Bridge Co.* v. *United States,* 216 U. S. 177, [54 L. Ed. 435, 30 Sup. Ct. Rep. 356].) In the same way Congress prescribing the qualifications necessary for aliens to possess to entitle them to admission may lawfully delegate to executive officers the determination whether or not those qualifications exist. (*Turner* v. *Will-*

*iams*, 194 U. S. 279, [48 L. Ed. 979, 24 Sup. Ct. Rep. 719].) And while inferior boards or tribunals cannot be invested with power to compel obedience to their orders or regulations by fine or imprisonment (*Interstate Commerce Comm.* v. *Brimson*, 154 U. S. 447, [38 L. Ed. 1047, 14 Sup. Ct. Rep. 1125]), nevertheless it is within the power of Congress to authorize them to make such reasonable regulations and orders and itself to declare that a violation of them shall be punishable as a misdemeanor. (*United States* v. *Grimaud*, 220 U. S. 506, [55 L. Ed. 563, 31 Sup. Ct. Rep. 480]; *Light* v. *United States*, 220 U. S. 523, [55 L. Ed. 570, 31 Sup. Ct. Rep. 485].) The requirements of the state legislature that no milk shall be received for sale or delivery to the city of New York without a permit in writing from the board of trade and subject to the conditions of such permit is a reasonable delegation of authority (*New York* v. *Van de Carr, supra*); and like delegated powers of censorship in permitting or prohibiting the display of moving-picture films are held valid. (*Mutual Film Corp.* v. *Indiana Comm.*, 236 U. S. 230, [Ann. Cas. 1916C, 296, 59 L. Ed. 552, 35 Sup. Ct. Rep. 387]; s. c., 236 U. S. 247, [59 L. Ed. 561, 35 Sup. Ct. Rep. 393]; *Mutual Film Corp.* v. *Hodges*, 236 U. S. 248, [59 L. Ed. 561, 35 Sup. Ct. Rep. 393].)

It would unduly and unnecessarily prolong this consideration to cite the like adjudications which have been handed down by the state courts, and we may come immediately to a consideration of the ordinance before us. It does not define what conditions the city electrician must find to exist before he determines that the electrical apparatus is unsafe or dangerous. From the very nature and character of such apparatus it would be impossible for any ordinance so to do without working in many instances the very oppression which its language, necessarily general, is designed to prevent. As we have said, it is presumed that the city electrician will act fairly. It is also presumed that he is competent. An unnecessary liberality is shown in this ordinance in conferring, as it does, a right of appeal to the council, for the ordinance, if good at all, would unquestionably be good without such right of appeal, and the householder conceiving himself to be injured would be left to his action in court. This ordinance is peculiarly like the North Carolina statute construed by the supreme court of the United States in *Red "C" Oil*

*etc. Co.* v. *Board of Agriculture of North Carolina,* 222 U. S.
380, [56 L. Ed. 240, 32 Sup. Ct. Rep. 152].   The statute re-
quired only that illuminating oils ''be safe, pure, and afford a
satisfactory light,'' and gave to the state board of agriculture
the power to establish rules and regulations and to determine
what oils measured up to standard.   The supreme court of
the United States declared that this was not an illegal grant
of legislative or judicial power and the requirements of the
statute that illuminating oils should be ''safe, pure, and af-
ford a satisfactory light, established a 'sufficient primary
standard.' ''   The matter is concisely and clearly stated in
2 Dillon (Municipal Corporations, 5th ed.), section 598,
where, discussing the question, he says: ''The fact that the
dispensing power was apparently valid without restraint or
qualification has been regarded as arising merely from the
difficulty of defining in advance upon what conditions the
permit shall be given or the dispensing power exercised.''
It is concluded, therefore, that the ordinance here under con-
sideration is not void as unwarrantedly conferring upon the
city electrician judicial or legislative powers, nor yet void be-
cause its terms are either indefinite, arbitrary, or oppressive.
(*Ex parte Fiske,* 72 Cal. 125, [13 Pac. 310].)

The court, as has been said, not only decreed the ordinance
to be void in the particulars discussed, but found also that
plaintiff's premises were not in an unsafe or dangerous con-
dition.   As has also been said, plaintiff was within his rights
in resorting to the court for a determination of this question,
and the finding of the court amounts to a declaration that in
this particular instance the power of the city electrician was
unjustly and oppressively used.   This finding is sufficient to
support the judgment, but only in so far as it relieves the
plaintiff from the necessity of complying with the directions
of the city electrician touching necessary changes and repairs.
The argument of appellant that equity acts upon conditions
as it finds them at the time of entering its decree and that
before this decree was entered an appeal to the city council
was open to the plaintiff, and that for his failure to avail
himself of this appeal he has lost his right to resort to the
courts for relief, while well founded in principle, does not
meet the situation here presented, where it was apparently
not shown and certainly not found that the respondent was
advised of this amended ordinance at such a time and under

such circumstances as called upon him to avail himself of the permissive appeal to the council which it gave.

As the finding that plaintiff's electrical wiring and apparatus are not dangerous to life and property and are in a reasonably safe and proper condition is sufficient to support the judgment given, upon this ground, and upon this ground alone, it is affirmed.

Sloss, J., Shaw, J., Melvin, J., Lorigan, J., and Angellotti, C. J., concurred.