[Civ. Nos. 2411 and 2452.    Third Appellate District.—April 20, 1922.]

## O. W. CHAMBERS, Petitioner, v. BOARD OF SUPERVISORS OF TEHAMA COUNTY, Respondent.

[1] IRRIGATION DISTRICTS—SUFFICIENCY OF PETITIONS—JUDICIAL FUNCTION OF BOARD OF SUPERVISORS.—A board of supervisors, in considering the question whether a petition for the organization of an irrigation district under the provisions of the Irrigation Act of March 31, 1897, and the acts amendatory thereof, has been signed by the requisite number of owners, exercises a judicial function.

[2] ID. — DENIAL OF PETITION — CERTIORARI — FUNCTION OF COURT — SCOPE OF REVIEW.—On a proceeding in *certiorari* to review the action of a board of supervisors in denying a petition for the organization of an irrigation district, the court is not to try

any issues of fact that were presented to the board of supervisors, but its investigation is limited to an inquiry as to the evidence before said board and whether in view of the situation as then and there existing the board had any legal discretion to dismiss or deny the petition.

[3] ID.—SUFFICIENCY OF NUMBER OF SIGNERS—JURISDICTION OF BOARD TO DECIDE.—The law expressly clothes the board of supervisors with authority to decide whether a petition for the organization of an irrigation district under the provisions of the Irrigation Act of March 31, 1897 (Stats. 1897, p. 254), and the acts amendatory thereof, was signed by the requisite number of property owners, and if there is any substantial evidence before said board or there is any ground for a rational inference that the petition was not so signed, the court cannot say that the board exceeded its jurisdiction in so finding.

[4] ID.—QUALIFICATION OF LOT OWNERS AS SIGNERS—BENEFITS TO TOWN —PROVINCE OF BOARD.—Whether the owners of town lots should be deemed qualified petitioners for the organization of an irrigation district is a question of fact to be determined by the board of supervisors to whose discretion the legislature has committed it; and that board has authority to determine whether a town will as a whole be benefited directly by water for irrigation and so include it within the boundaries of an irrigation district.

[5] ID.—JUDICIAL REVIEW OF DECISION OF BOARD—BURDEN OF PROOF. In proceedings in *certiorari* to annul an order of a board of supervisors denying a petition for the organization of an irrigation district and in *mandamus* to compel said board to adopt a resolution determining that all the provisions of the law have been complied with, the petitioners must prove every fact that lies at the foundation of their proceeding, and where any material fact is left to conjecture or is not established satisfactorily the court cannot say that the board exceeded its jurisdiction or that it violated a plain ministerial duty.

PROCEEDINGS in Certiorari to review an order of a Board of Supervisors denying a petition for the organization of an irrigation district and in Mandamus to compel said board to adopt a resolution determining that the law had been complied with. Orders to show cause discharged and peremptory writs denied.

The facts are stated in the opinion of the court.

4. Lands which may be included in irrigation district, note, **Ann. Cas.** 1916A, 1222.

McCoy & Gans and W. P. Johnson for Petitioner.

Fred C. Pugh for Respondent.

BURNETT, J.—Petitioner made an original application to this court for a writ of review (No. 2411) to annul an order or resolution of the board of supervisors of Tehama County denying a petition for the organization of an irrigation district to be known as Los Molinos Colony Irrigation District, and later, an application for a writ of mandate (No. 2452) to require the board to adopt a suitable resolution determining that all the provisions of the Irrigation Act of March 31, 1897 (Stats. 1897, p. 254) and the amendatory acts have been complied with. The two applications were made for the reason that petitioner was in doubt as to whether it is a case for *certiorari* or for mandate, and it was stipulated at the hearing herein that they might be considered together by this court and covered in one opinion.

The petition to the board of supervisors was in proper form and was published as required by the statute. A written opposition or contest was filed by certain property owners within the proposed district, and after a public hearing the board denied the petition. Several questions have been discussed by counsel, but the only serious controversy seems to be as to whether the evidence before the board of supervisors showed without substantial conflict that the petition for the organization of the district was signed by the requisite number of property owners in view of section 1 of said act, providing "A majority in number of the holders of title or evidence of title to lands susceptible of irrigation from a common source, and by the same system of works, including pumping from subsurface or other waters, such holders of title or evidence of title representing a majority in value of said lands, may propose the organization of an irrigation district, under the provisions of this act."

[1] In considering this question there can be no doubt that the board exercised a judicial function. "The board must hear all relevant and competent evidence offered, and thereupon determine whether or not the petition is signed by a majority in number of the holders of land within the proposed district susceptible of irrigation from the same source or system and whether or not the lands held by such signers

represent a majority in value of such lands within the district. . . . This scheme presents all the usual elements of a judicial proceeding, the notice, the hearing, the taking of evidence and the judgment.'' (*Imperial Water Co.* v. *Supervisors,* 162 Cal. 14 [120 Pac. 780].)

[2] We take it, also, that in the determination of the merits of these applications we are not to try any issues of fact that were presented to the board of supervisors, but our investigation is limited to an inquiry as to the evidence before said board and whether in view of the situation as then and there existing, the board had any legal discretion to dismiss or deny the petition. (*Inglin* v. *Hoppin,* 156 Cal. 483 [105 Pac. 582]; *Harelson* v. *South San Joaquin Irr. Dist.,* 20 Cal. App. 324 [128 Pac. 1010].)

[3] If there was any substantial evidence before the board or there was any ground for a rational inference, that said petition was not signed by the requisite number of property owners, and, for that reason, the board decided against the petitioners, manifestly we cannot say that the board exceeded its jurisdiction, for the law expressly clothes the board with the authority to decide that very question in accordance with the view entertained by said board of the weight of the evidence and the credibility of the witnesses. Likewise, in such case the writ of mandate would not issue because its office is not to control the discretion of an inferior tribunal, but to compel it to act where only one course is open to it under the law; in other words, to require that said tribunal or officer discharge a plain ministerial duty. These propositions need not be discussed any further, as they are elementary and not disputed.

What, then, was the situation before the board in relation to this question? Without reviewing in detail the evidence as to the number of competent and qualified signatures to the petition we may accept the admission of petitioner that the number is 140. This is shown by the supplementary affidavit of H. S. Gans, one of the attorneys for petitioners, filed with the board on October 17, 1921.

What was the showing as to the whole number of qualified property owners within the proposed district? As to this, it was not disputed that 319 names appeared upon the assessment-roll. From this number it is the claim of petitioner that 104 should be deducted because they were the owners

of lots in the towns of Los Molinos and Dairyville.   If such
deduction were made we would have, of course, 215, of which
140 is obviously more than one-half.   But here we are con-
fronted with the contention of respondent that the showing
before the board of supervisors did not justify any such
deduction.   Before considering the disputed question of fact
it is well to note the peculiar language of the statute re-
quiring the signatures to the petition to be of a majority
of the owners of "lands susceptible of irrigation from a
common source."   It does not necessarily follow from this
that town lots should be excluded from consideration.   The
primary purpose of the act is to accomplish the irrigation
of agricultural lands, and in the sense in which the expres-
sion is used in the statute the ordinary town lot should
not be classified with said lands, but it is true that some
town lots are of such size and put to such use as to require
irrigation, and the difference between such lots and agricul-
tural lands would be only one of degree and would not jus-
tify any discrimination.   **[4]**   Whether the owners of the
town lots should be deemed qualified petitioners in any par-
ticular case would be a question of fact to be determined by
the board of supervisors to whose discretion the legislature
has committed it.   It is also true that the board has author-
ity to determine whether a town will as a whole be benefited
directly by water for irrigation and so include it within
the boundaries of an irrigation district.   The foregoing fol-
lows from a consideration of the statute and the decisions of
the supreme court in *Board of Directors* v. *Tregea,* 88 Cal.
334 [26 Pac. 237]; *In re Central Irr. Dist.,* 117 Cal. 382
[49 Pac. 354]; *Imperial Water Co.* v. *Supervisors,* 162 Cal.
14 [120 Pac. 780]; *La Mesa Homes Co.* v. *La Mesa etc. Irr.
Dist.,* 173 Cal. 121 [159 Pac. 593].

Turning to the record before the board as to this feature
of the case we find that petitioners, after describing the
lands to be included in the proposed district comprising
some 12,000 acres, alleged in their petition, "that said lands
are susceptible of irrigation from the common sources and
by the same system of works mentioned herein."   This alle-
gation was not challenged by the written objection filed by
the contestant property owners. except that there appeared
upon said petition "the names of 29 persons who are the
owners and holders of the title or evidence of title to town

lots in the town of Los Molinos and are not the owners, or the holders of title or evidence of title to any other lands within said proposed Irrigation District; said town lots not being agricultural lands and not being lands that will be benefited by irrigation'' and the names of six persons ''who hold the title or evidence of title to town lots in the town of Danville.'' There was thus presented an issue as to the property qualification of only 35 of those on the assessment-roll, and while it may not be that petitioners would be estopped from showing before the board that a larger number was disqualified, yet the board of supervisors, acting as a judicial tribunal, would be justified, at least where no proof was offered to the contrary, in assuming that as to the remainder they were owners of lands susceptible of irrigation from a common source. And we find that no evidence was offered before the board as to this disqualification except as to those challenged by the contestants, and the effect of the showing in that regard is that 24 of petitioners were included in that class.

It is the contention, however, of petitioner that when it is shown that certain persons were owners of town lots, it must be inferred that such lots were not susceptible of irrigation from a common source and the owners were therefore disqualified. The only evidence before the board shown by the record as to this is the following testimony of H. S. Gans: ''That of the said 319 persons whose names appear upon the said assessment-roll, 91 were assessed upon property within the town of Los Molinos; that of said 91 persons, 27 were signers to the said petition for organization of district; that of said 319 persons, 13 were assessed upon property within the town of Danville; that of said 13 persons, 3 were signers to the said petition for organization of district; that taking the sum of 91 and 13 names, to wit, 104 names, from said 319 names would leave the balance of 215 names as on the assessment-roll; that 4 of said 27 persons signing said petition and on the assessment-roll for lots within the town of Los Molinos, as aforesaid, were also on the said assessment-roll for lands not in said town of Los Molinos and within the boundaries of said irrigation district.''

There was, thus, no description whatever of the character or extent of the property within said towns not represented on said petition. It was not even designated as *lots* but

*property,* and it would not be unreasonable to suppose that in these sparsely populated towns or villages the several tracts of land may have been of considerable extent and susceptible to irrigation.   However, if we concede that from that evidence the board of supervisors should have drawn the inference that this property should not have been included in the calculation at all, there is nothing to show that the owners were not assessed upon other property in the district which should be so considered.   It is to be observed that there is evidence in this respect as to those who signed the petition, but not as to the balance.

[5]   It is not to be disputed that the burden of proof was upon petitioners to prove every fact that lies at the foundation of their proceeding.   They allege and were required to prove that their petition was signed by a majority of all the qualified owners of property within the proposed district. This involved, of course, the two considerations, to wit, the number of eligible names on their petition and the whole number upon the assessment-roll.   If either of these facts was left to conjecture or was not established satisfactorily, this court cannot say that the board exceeded its jurisdiction or violated a plain ministerial duty.   As we view the record, we cannot say with any degree of certainty that more than 24 names should have been deducted, by reason of the ownership of lands not susceptible to irrigation, from the assessment-roll.   This would leave 295, and the 140 would therefore fall short of the required number.

It appears that about 90 of those who signed said petition filed with the board, at the time of the hearing, a written application to have their names withdrawn and stricken from the petition upon the ground that they signed it under a misapprehension.   Petitioner urges that this circumstance probably influenced the board in its denial of the petition.   But the said Irrigation Act in section 2 provides that "signatures to the petition may be withdrawn at any time before the publication is commenced as in this section required," etc., thereby implying that it may not be done thereafter.   Since the record does not show to the contrary, we must assume that the board of supervisors had due regard for this provision of the statute and gave no effect to the attempted withdrawal.   Indeed, the minutes show the ground upon which the order was based as follows:

"Whereas, the above matter having been heard by this board and evidence oral and documentary having been introduced and it appearing therefrom that the said petition does not comply with the requirements of an act approved March 31, 1897, and the subsequent acts amendatory thereof and supplemental thereto, in that said petition does not contain, or is not signed by a majority in number of the holders of title, or evidence of title as required by said act and the amendments thereto.

"Now, therefore, be it Resolved, That it is the sense of this board, and the board hereby finds, as a fact, that said petition contains less than a majority of the holders of title and evidence of title as shown by the assessment roll of Tehama County for the year of 1921, that the said petition be, and the same is hereby denied."

We think it cannot be held that the board acted without jurisdiction or in violation of its plain duty; and, moreover, if it might be said that there was sufficient evidence to justify a conclusion in accordance with the contention of petitioner, the state of the record is such that we should exercise our discretion in favor of respondent.

The order to show cause in each case is discharged and the peremptory writ denied.

Hart, J., and Finch, P. J., concurred.