[Civ. No. 5867. First Appellate District, Division Two.—December 15, 1927.]

DAVIDA S. BLEUEL, Respondent, v. CITY OF OAKLAND (a Municipal Corporation) et al., Appellants.

Preston Higgins, City Attorney, C. Stanley Wood, Acting City Attorney, and George C. Perkins and Homer W. Buckley, Deputies City Attorney, for Appellants.

John Jewett Earle for Respondent.

STURTEVANT, J.—The plaintiff applied to the trial court for a writ of *mandamus*. The defendants appeared and answered. A trial was had before the trial court sitting without a jury and the trial court made findings in favor of the plaintiff. From a judgment entered thereon the defendants have appealed and have brought up a bill of exceptions.

The plaintiff had commenced the construction of a building for the purpose of conducting a riding academy near the corner of Daisy Street and Davenport Avenue in the City of Oakland. Thereafter the individual defendants, acting as the council of the City of Oakland, passed and enacted Ordinance 3183 regulating the erection and maintenance of riding academies; among other things the ordinance provided that before anyone commenced the operation of a riding academy he should apply to the council for a permit; the plaintiff applied for a permit, the permit was refused, and she commenced this proceeding. On the presentation of her application before the council there were several hearings and many witnesses were called and examined. Many documents were produced and offered in evidence. Several members of the council went to the property owned by the plaintiff and made a personal examination of the property and the territory immediately contiguous thereto. On the trial of the action before the

trial court similar proceedings were had. Three of the councilmen were called as witnesses and were examined as to the proceedings had before the council. Upon request of counsel the trial court visited the plaintiff's property and made an examination thereof and of the territory immediately contiguous.

The record is long and we will not attempt to recite all of the evidence introduced in the trial court. Some of it follows: About the time that the defendants refused a permit to the plaintiff they granted a permit to one Hayford to maintain a riding academy in the same general neighborhood. The defendants did not consider that no riding academy should be allowed in the neighborhood. Both before the council and also before the trial court there was evidence that the plaintiff's building was constructed in the manner required by law and there was no evidence that the building, as such, was objectionable in any respect; that the plaintiff's building was properly maintained and there was no evidence that it was improperly maintained; that the plaintiff's building and Hayford's building are in the same general neighborhood; that neither building was a fire risk; that both buildings are situated in a rural community where the roads are unpaved and where there are numerous cow-paths; that some of the property in the neighborhood is used for pasturing goats and some is used for poultry raising; that the Hayford building is located on lower ground than is the building of the plaintiff; that the Hayford building is in a more thickly settled community and if there is any menace there is more of a menace to health by reason of the Hayford building than in the building of the plaintiff; that the distance between the two buildings is but a few blocks; that within a radius of five hundred feet around the plaintiff's property there are five buildings; that within a radius of one thousand feet there are many more homes around the Hayford property than around plaintiff's property; that within five hundred feet of the Hayford property is an orphanage sheltering over one hundred small children; that the orphanage is much closer to the Hayford property than to the plaintiff's property; that the sanitary inspector, pursuant to the request of the defendants, made an examination and report to the defendants regarding the plain-

tiff's property; and that in his report he stated that he had made an investigation and he found it to be in an excellent locality, out in the country where homes will not be built up around it for a good many years and that he recommended that a permit be granted as the place complies with all the health regulations. Standing over against the foregoing evidence it should be stated that some of the councilmen testified that it had been the plan and intention of the council to reserve the foothills for residences and to confine places of business to the level territory and to the main thoroughfares; that the territory where the Hayford building is located is a potential business district and that the territory where the plaintiff's property is located is a potential residence district. In this same connection it should be stated that by section 11 of Ordinance 3183 it is provided: " . . . when the public health, safety, or general welfare should require, or for other cause, the council shall have power to revoke any permit previously granted . . . "

■ 1. The defendants contend that *mandamus* is not the proper form of remedy under the circumstances of this case. In this connection they call to our attention that the city council under the ordinance was clothed with discretionary power. The ordinance does not lay down predetermined rules or conditions by which a citizen may know in advance whether or not he will be granted a permit. Such legislation has been sustained by our supreme court upon the theory, expressed in 2 Dillon's Municipal Corporations, fifth edition, section 598, and quoted in *Gaylord* v. *City of Pasadena*, 175 Cal. 433, 440 [166 Pac. 348], that such discretionary power is justified in respect to certain businesses on account of the great difficulty of defining in advance the rules and conditions upon which a permit would or would not be given. It has also been sustained upon the broader ground that the reservation of such broad discretionary power is justified in respect to all businesses which are subject to police regulation either on account of their tendency to become a nuisance or on account of their tendency to become a nuisance if conducted in a certain locality or in a certain manner. (*Parker* v. *Colburn*, 196 Cal. 169, 177, 178 [236 Pac. 921].)

Previous to the time of the last cited opinion, the court had occasion, in several instances, to deal with the contention that such discretionary power would result in arbitrary discrimination and would be inimical to our system of law which requires all rules of action to be predetermined and predeclared. For example, *In re Holmes,* 187 Cal. 640 [203 Pac. 398], the court quoted *Gaylord* v. *City of Pasadena,* 175 Cal. 433 [166 Pac. 348], which in turn quoted *In re Flaherty,* 105 Cal. 558 [27 L. R. A. 529, 38 Pac. 981], it is said: " 'Laws are not made upon the theory of the total depravity of those who are elected to administer them; and the presumption is that municipal officers will not use these small powers villainously or for purposes of oppression or mischief.' If this petitioner had applied for a permit under the requirement of the section of the charter above quoted, and been either whimsically or arbitrarily refused such permit, he might, then, as is shown in *Gaylord* v. *City of Pasadena, supra,* have had recourse to the courts for relief from such unjust and arbitrary action."

Other authorities upholding the issuance of the writ when the discretionary powers of the inferior board have been abused are: *Tulare Water Co.* v. *State Water Com.,* 187 Cal. 533 [202 Pac. 874]; *Keller* v. *Hewitt,* 109 Cal. 146, 148, 149 [41 Pac. 871]; *Raisch* v. *Board of Education,* 81 Cal. 542 [22 Pac. 890]; *Levin* v. *Board of Medical Examiners,* 74 Cal. App. 104, 109 [239 Pac. 410]. The appellants rely upon *Chambers* v. *Board of Supervisors,* 57 Cal. App. 401 [207 Pac. 288], to the effect that discretion will not be controlled by *mandamus.* But in that case the court had no discretion to grant or deny the petition in any sense which is comparable to the discretion defined in the ordinance involved in the instant case. In the Chambers case the board of supervisors had the power to determine the truth or existence of certain prescribed allegations of fact set forth in the applicant's petition to the board. In case these facts were found to exist the board had no discretion but to grant the petition which was in the nature of a permit. Whatever the nature and extent of the discretion the board may be said to have had in that case, it was a discretion to determine certain allegations of fact. The legislature having given to the board the power

to determine those facts, the board's decision could not be reviewed except in a way substantially the same as upon a writ of *certiorari.* Some of these distinctions can be seen in the case of *Tulare Water Co.* v. *State Water Com.,* 187 Cal. 533 [202 Pac. 874]. .

While contending that *mandamus* is not the proper remedy, respondent has not indicated any other remedy available where such wide discretion is wrongly exercised by the city council. It certainly cannot be the intention of our courts to sustain ordinances vesting such broad discretionary powers in the city council, and justify the same with the statement that if such discretion is abused a remedy is available and yet refuse to hold available the writ of *mandamus* which seems to be the only appropriate writ. We conclude, therefore, that it may not properly be said that a writ of *mandamus* is not a proper remedy to control an alleged abuse of discretion.

2. It is next contended that the trial court had no jurisdiction to consider any evidence other than the evidence produced at the hearing before the city council on petitioner's application for a permit to conduct and maintain a riding academy. In this connection appellants complain particularly of the action of the court in viewing the premises where the petitioner proposed to conduct a riding academy and also in viewing the premises of the Hayford riding academy for the conduct of which a license had been previously granted. This seems to have been an important part of the evidence in the opinion of the trial judge. In taking this evidence, however, the trial court was not taking evidence which was not also taken by the city council, for the members of the council also visited the two premises in question and made other outside investigations which influenced them in arriving at their conclusion. The burden of showing error in this case is upon appellants as in other cases. Appellants have not shown affirmatively that the court heard or considered any evidence other than the evidence produced at the hearing before the city council.

3. The third point made by the defendants is that the evidence is insufficient and this point is subdivided into attacks on seven findings. The trial court made findings in which it held that the defendants abused their discretion in denying a permit to the plaintiff. In making those

findings it followed the wording of the petition of the plaintiff. In doing so it used many different adjectives, adverbs, and phrases which were synonymous with abuse of discretion. We think the attack on the findings is without merit. The following is a fair statement: "In accordance with elementary rules, *mandamus* is a proper remedy to compel municipal officers or boards to take action and exercise their discretion in respect 'of matters properly presented to them and within their jurisdiction; but it will not lie to control or review the exercise of this discretion, or compel the boards or officers to act in a particular way; ... *but the courts will relieve against an abuse of discretion . . . of these officers or boards.*" (38 C. J. 689, sec. 258.) In her petition the plaintiff pleaded the facts bringing her within the latter portion of the rule. The jurisdiction to hear and determine the allegations of the plaintiff's complaint rested in the trial court. (Code Civ. Proc., sec. 1090.) Whether the allegations of her petition were proved and whether there was any legal cause justifying the council in rejecting the plaintiff's application for a permit were all questions which the trial court was bound to hear and determine. In *Raisch* v. *Board of Education*, 81 Cal. 542, at page 546 [22 Pac. 890], the court said: "And whether there was a semblance of cause for rejecting the claim or not was a question which might be and was properly tried in the court below." The question then arises as to whether any evidence was introduced in the trial court supporting or tending to support its findings that there was an abuse of discretion. We think there was and we have set forth above some portions of it.

There were no conflicts in the evidence. The territory including plaintiff's property has not been zoned so far as the record discloses. The only question of fact before the trial court was reduced to this: Will plaintiff's riding academy conflict with the plans of the council as set forth above in the statement of facts. It is not claimed that it does now conflict. The argument is that in the opinion of the council it will so conflict at some time in the future. But that contingency is provided for by section 11, Ordinance 3183, *supra*. Whenever the time arrives that there is any cause for doing so the council retains the power to revoke the permit.

The legal effect of the judgment of the trial court was to hold that the plaintiff presented to the defendants, as the council of Oakland, a *prima facie* case showing that she was entitled to a permit as of the date of the presentation of her application and that the council abused its discretion in refusing the permit on the ground that, in the opinion of the council, at some future date the location of the riding academy would be a residence district and the presence of the academy would be objectionable to the general welfare of the public at such future date.

We find no error in the record. The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.