Ex parte MAUDE WHITE.

No. A-8794.   Feb. 15, 1935.
(41 Pac. [2d] 488.)

Joe W. Simpson, for petitioner.

H. O. Bland, E. M. Gallaher, Bert E. Johnson, and Carl H. Ravis, for respondent.

EDWARDS, J.   This is an original proceeding in habeas corpus.   Petitioner alleges she is unlawfully restrained by the chief of police of Tulsa; that she was convicted in the municipal court of violating sections 16, 18, and 19, art. 3, c. 35, Ordinances of the city of Tulsa, which forbid soliciting contributions for certain purposes without a permit; that said ordinance is unconstitutional, for the reason it vests in ministerial officers an arbitrary power to grant or refuse license without providing rules and regulations, and that it is too vague, indefinite, and uncertain to define an offense.

The chief of police in response states he is holding petitioner by commitment of the municipal court on a conviction for violation of an ordinance prohibiting soliciting funds for charitable and benevolent purposes without having obtained a permit.

The ordinance in question creates a city solicitations committee of three members, appointed by the mayor, consisting of the chief of police, secretary of the retail merchants' association, and secretary of the ministerial alliance. It provides that no person shall solicit for charitable, religious, or benevolent purposes, or sell or offer tickets or advertising for benefit performances to finance work of charity, religion, or benevolence, without having first obtained a permit and providing for written application for permit to be made to the secretary of the committee, stating the name of the person desiring to solicit and the purpose for which the funds are to be solicited; that said committee shall then investigate such applications, and, if they find the person desiring to solicit funds is in good faith for a bona fide charitable, religious, or benevolent purpose, the permit shall be issued by the secretary; if not, it shall be refused, and appeal may then be had to the full committee, where a majority may issue or refuse permit. The ordinance exempts from its application any church or charitable, religious, or benevolent association which solicits funds or advertises or sells tickets within the membership of its organization or subdivision or subordinate organization, but provides that solicitation outside of its membership shall not be conducted without the approval of the solicitations committee.

Petitioner relies mainly on Ex parte Dart, 172 Cal. 47, 155 Pac. 63, L. R. A. 1916D, 905, Ann. Cas. 1917D, 1127, which held unconstitutional an ordinance of Los Angeles quite similar to the ordinance here. That court

appears to have been more impressed with the manner in which the ordinance was attempted to be enforced than with the question of its validity  It appears the charities commission of the city demanded that the Salvation Army, of which petitioner was an officer, as a condition precedent to obtaining the permit, should be governed by a local board, residents of the city, and that all the property of the Salvation Army in the city should be conveyed to its local board and its financial work conducted by such local board, and that no budget or funds should be prepared and enforced for other than work in Los Angeles; that all its offerings and contributions should be for local purposes and none used by the general officers.  That this was an arbitrary and unreasonable requirement is evident.  It no doubt influenced the opinion, for the court expressly held the soliciting contributions for charitable purposes might be regulated, providing reasonable supervision of the person engaged and restrictions on the use of the contributions received to prevent unscrupulous persons from obtaining money or to prevent the wrongful conversion of such funds.  The California court has receded from the Dart Case.  See Gaylord v. City of Pasadena, 175 Cal. 433, 166 Pac. 348, 349; Carter v. Stevens, 211 Cal. 281, 295 Pac. 28; Ex parte Holmes, 187 Cal. 640, 203 Pac. 398; Bleuel v. City of Oakland et al., 87 Cal. App. 594, 262 Pac. 477.

In Gaylord v. City of Pasadena, supra, the court said:

"Even a casual observer of governmental growth and development  must have observed the ever-increasing multiplicity and complexity of administrative affairs—national, state, and municipal—and even the occasional reader of the law must have perceived that from necessity, if for no better grounded reason, it has become increasingly imperative that many quasi legislative and quasi judicial functions, which in smaller communities and under more

primitive conditions were performed by the legislative or judicial branches of the government, are intrusted to departments, boards, commissions, and agents. No sound objection can longer be successfully advanced to this growing method of transacting public business. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense, makes for the safety of the republic and is thus sanctioned by the highest law."

In State v. Hundley, 195 N. C. 377, 142 S. E. 330, 57 A. L. R. 506, the Supreme Court of North Carolina, construing an ordinance of the city of Charlotte very similar in scope and purpose to the ordinance in the instant case, in syllabus 1 and 5 held:

"1. The provisions of a municipal ordinance forbidding the solicitation upon the streets of the city of alms for individual or charitable purpose by anyone not in possession of a permit from the governing body of the city are not unreasonable or oppressive."

"5. An ordinance forbidding the soliciting of alms upon the streets of the city without a permit is not invalid as conferring arbitrary power upon the municipal authorities as to the issuance of permits, where they are required to issue them unless they are satisfied that the applicant is not worthy of assistance, that the cause is not worthy, or that the funds solicited will not be properly distributed."

In the body of the opinion the court reasons thus:

"* * * We concur with the learned judge who presided at the trial in the superior court that the ordinance is valid. We find nothing therein unreasonable or oppressive, nor does the ordinance confer upon the governing body of the city of Charlotte arbitrary power to discriminate between applicants for permit to engage in the business of soliciting alms or begging charity, for a charitable purpose, upon the streets of the city of Charlotte. It is made the duty of said governing body to issue the permit to the applicant unless the said governing body shall be satisfied (1) that the said applicant is not worthy of as-

sistance or help from the citizens of Charlotte, or (2) that the cause said applicant represents is not a worthy cause, or (3) that the funds solicited will not be properly disbursed. * * *"

See, also, State ex rel. Altop v. City of Billings, 79 Mont. 25, 255 Pac. 11, annotated in 54 A. L. R. 1091f; Dillon on Municipal Corporations (5th Ed.) p. 937.

In Commonwealth v. McDermott, 296 Pa. 299, 145 A. 858, it is held:

"Act May 13, 1925, P. L. 644 (Pa. St. Supp. 1928, § 2637a1 et seq. [10 PS § 141 et seq.], prohibiting solicitations of money and property for charitable, religious, and patriotic purposes without obtaining license, and exempting fraternal, religious, educational, and certain other organizations, held not invalid as denying equal protection, nor are the exemptions arbitrary or unreasonable."

In disposing of the contentions very similar to those here the court said:

"* * * The act itself deals primarily only with purposes, and directs that any organization within the commonwealth, except those indicated, proposing to appeal to the public for pecuniary aid for the promotion of charitable purposes, must submit to an investigation by the welfare department. In the cases before us the sole ostensible purpose was that of securing help from the public for needy mothers and children. Unquestionably the concerns organized by defendants in the present instance come within the supervisory powers of the department of welfare. But the act does not single out only associations or organizations such as those. It embraces specifically any and all kinds of associations that may be entirely or in part carrying out plans and campaigns for benevolent purposes; and its enactment was an exercise by the Legislature of the police power of the state to prevent the public from being made the victim of swindling and corrupt

operations engineered by persons or associations hiding their illegal practice under the guise of charity. * * *

"The Legislature, however, recognized the fact that there are many organizations and institutions which engage in charity work, either in whole or in part, as churches, educational bodies, and other associations of which the general public has a wide and intimate knowledge, and in which it has full confidence. With this situation in mind, the lawmakers deemed it quite unnecessary to compel the department of public welfare, which is composed of enlightened persons who would undoubtedly have ample information themselves as to the character of those public bodies, to use their time and labor in gathering information they already possessed. Moreover, to require such institutions to apply for a license, and submit to a wholly needless investigation of their plans and purposes, would in fact have the specified result of hampering, hindering, and delaying their labors, and result in interference, for which there would not be even an excuse. The high standing of the organizations released from the license requirement, their known capacity for effective labor in the realms of benevolence, clearly justify the exemption accorded them by the act. Such standing and adequacy may be accounted common knowledge, and undoubtedly was so considered by the Legislature as proper ground for relieving them from the force and effect of the statute. * * *

"Even with numerous regulative state and local laws in existence, it is surprising how many operations are carried on by persons and associations who, secreting their activities under the guise of benevolent purposes, succeed in cheating and defrauding a generous public. It is in fact amazing how profitable the fraudulent schemes and practices are to people who manipulate them. * * *"

The city has authority under the exercise of its police power to determine whether or not there shall be restrictions on soliciting by unscrupulous persons or for unworthy causes or for fraudulent purposes. That solicitations of contributions under the guise of charitable and benevo-

424

lent purposes is grossly abused is a matter of common knowledge. Certainly the solicitation of contributions in good faith for worthy purposes should not be denied, but somewhere should be lodged the power to determine within reasonable limits the worthy from the unworthy. The ordinance here has put that power in the hands of a board probably as well equipped to determine that question as any that could be selected. If the power is abused, there is a remedy by appeal, certiorari, or mandamus. Bleuel v. Oakland, supra. The prevailing presumption that the ordinance is valid and reasonable is not overcome, and the writ should be and is denied.

DAVENPORT, P. J., and DOYLE, J., concur.