[Crim. No. 2367. In Bank.—December 28, 1921.]

In the Matter of HAROLD HOLMES on Habeas Corpus.

**[1]** · Municipal Corporations—San Francisco—Occupational Tax Ordinance — Construction of Term "Goods, Wares and Merchandise"—Dealers in Second-hand Books.—The words "goods, wares and merchandise" as employed in article II, chapter 2, section 15, of the charter of the city and county of San Francisco, and in the ordinance, adopted pursuant to such charter provision, imposing license taxes on certain businesses, callings, trades, and employments, includes books, and a person engaged in the busi-

---

1. Police power as exercised by municipalities over the business of pawnbrokers, junk dealers, and dealers in second-hand goods, note, 32 L. R. A. 116.

ness of buying, selling, and exchanging second-hand books, as a principal occupation, and not as a mere incident to some other business, is required to pay the tax.

[2] ID.—PROCURING OF PERMIT FROM POLICE COMMISSIONERS—REASONABLE REGULATION.—The requirement of the ordinance of the city and county of San Francisco imposing license taxes on certain businesses, callings, trades, and employments, that every person engaged in the business of buying, selling, or exchanging second-hand books shall procure a permit from the board of police commissioners before engaging in such business is a proper and reasonable regulation.

[3] ID.—ISSUING OF PERMITS — POWER OF SUPERVISORS — CHARTER — CONSTITUTIONAL LAW.—The investment of the board of police commissioners of the city and county of San Francisco with the general and unqualified power to grant or refuse permits to dealers in second-hand merchandise as contained in article VIII, chapter 3, section 9, of the charter, is not unconstitutional as conferring arbitrary powers upon the board.

PROCEEDING on Habeas Corpus to secure release from custody upon a charge of refusal to pay a municipal license tax. Writ dismissed.

The facts are stated in the opinion of the court.

F. D. Brandon and R. P. Henshall for Petitioner.

Matthew Brady, District Attorney, I. M. Golden, Assistant District Attorney and J. A. Pritchard for Respondent.

THE COURT.—The petitioner herein applied for and was granted a writ of *habeas corpus* by which he sought to have determined the legality of his arrest and detention upon a complaint filed in the police court of the city and county of San Francisco charging him with having engaged in the business of buying, selling, and exchanging second-hand books in said city and county of San Francisco without having obtained a municipal license so to do, and in violation of the provisions of section 63 of Ordinance No. 5132 of said city and county, requiring such license, and of his conviction and imprisonment under said charge.

Upon the hearing of said application it was stipulated that the complaint upon which the petitioner was arrested and convicted sufficiently charged the commission of the act alleged therein as constituting said offense, thus leaving as the only

187 Cal.—41

matters for our determination the construction of the provisions of the charter of said municipality under the terms of which the ordinance under which the petitioner was convicted was drawn, and of the said ordinance for the alleged violation of which such conviction was had.

In article II, chapter 2, section 15, of the charter of San Francisco, it is provided that the board of supervisors have power:

"15. To impose license taxes and to provide for the collection thereof; but no license taxes shall be imposed upon any person who, at any fixed place of business in the City and County, sells or manufactures goods, wares or merchandise, except such as require permits from the Board of Police Commissioners as provided in this Charter."

In article VIII, chapter 3, section 9, of said charter, it is provided that the board of police commissioners shall have power:

"9. To grant or refuse to grant permits to any person engaged or desiring to engage in business as pawnbroker, peddler, junkshop keeper, dealer in second-hand merchandise, . . . and such other characters of business or callings as may hereafter be required by ordinance enacted by the Board of Supervisors to obtain permits from this Board."

In article VIII, chapter 4, section 7, of said charter, it is provided that:

"7. The Chief of Police shall possess powers of general police inspection, supervision and control over all pawnbrokers, peddlers, junk-shop keepers, dealers in second-hand merchandise, auctioneers and intelligence office keepers. All persons engaged in said callings must first procure permits from the Commissioners."

On July 1, 1920, the board of supervisors of said municipality adopted an ordinance entitled, "License Ordinance No. 5132, New Series," imposing license taxes on certain businesses, callings, trades, or employments within the city and county of San Francisco.

"Second-hand Goods.

"Section 63: Every person, firm or corporation engaged in the business of buying, selling or exchanging second-hand goods, such as provisions, goods, wares, merchandise, medicines, drugs, jewelry, precious metals or wares, shall (after securing a quarterly permit from the Board of Police Com-

missioners to carry on the business), pay a license of twenty-five (25) dollars per quarter.''

It was under the foregoing ordinance, and for the alleged violation thereof, that this petitioner was arrested, convicted, and confined. It is his contention that as a person engaged in the business of dealing in second-hand books he does not come within the terms of said ordinance, and, hence, could not legally be made the subject of conviction thereunder. He makes the further contention that the business of a dealer in second-hand books is not such a business as requires regulation under the police power of the municipality, or the application for an issuance of permits as a condition precedent to the right to conduct such business; and, finally, the petitioner contends that the grant of power to the police commission to issue or deny permits to conduct such business is illegal as conferring arbitrary powers upon said board.

[1] The appellant's first above contention involves an inquiry as to the meaning of the words ''goods, wares and merchandise'' as employed in the several sections of the charter of San Francisco above quoted, and as to the scope and meaning of the same term as found in the ordinance under the provisions of which the petitioner was convicted and confined. The appellant's first contention is that the words ''goods, wares and merchandise'' as used in the sections of the charter and of the ordinance above set forth are not to be construed either singly or collectively as including books. This contention cannot be sustained. The word ''goods'' is defined in Webster's New International Dictionary as ''movables; household furniture; personal or movable estate; wares; merchandise; commodities bought and sold by merchants and traders.'' The earliest definition of the word ''goods'' is to be found in Bailery's Large Dictionary issued in 1732, which defines it as ''merchandise.'' Samuel Johnson, the next English lexicographer, defined ''goods'' as ''movables in a house; wares; freight; merchandise.'' The term ''wares'' is also defined in the dictionaries as a synonym of ''merchandise,'' while the term ''merchandise'' is defined by Webster and the other lexicographers as ''the objects of commerce; whatever is usually bought and sold in trade, or market, or by merchants; wares, goods, commodities.'' In the case of *Blackwood* v. *Cushing*

*Packing Co.,* 76 Cal. 212, [9 Am. St. Rep. 199, 18 Pac. 248], in construing the meaning of the word "merchandise," as used in section 1768 of the Civil Code, it was stated that it "covers all kinds of personal property which is bought and sold in the market." The term "merchandise" as used in acts and ordinances relating to taxation has been construed to cover all kinds of personal property. (*Loeber* v. *Leininger,* 175 Ill. 487, [51 N. E. 703]; *Wynne* v. *City of Eastman,* 105 Ga. 614, [31 S. E. 737]; *City of Pittsburg* v. *Klatchthaler,* 114 Pa. 547, [7 Atl. 921].) The phrase "goods, wares and merchandise" when thus used in conjunction have been given an even more inclusive meaning, since it is stated in Cyc. under that title that "these words are constantly used in legal and common parlance to distinguish whatever species of property is not embraced in the phrase lands, tenements and hereditaments." Cases almost without number might be cited as embracing and approving these general definitions of these words. The following may be referred to as bringing these definitions somewhat nearer to the particular form of personal property involved in this proceeding. In the case of *Smith* v. *Wilcox,* 24 N. Y. 353, [82 Am. Dec. 302], it was held that the words "goods, wares and merchandise," as used in a statute prohibiting the sale of "goods, wares and merchandise" on Sunday, included the sale of newspapers on that day, while in the case of *Commonwealth* v. *Nax,* 13 Gratt. (54 Va.) 789, it was held that a dealer in published music was bound to obtain a license under a statute requiring merchants selling at any store or place "any goods, wares and merchandise" to take out such license, the court saying that this phrase as used in the statute was "applicable to the kinds of merchandise to be found exhibited for sale in the store of every bookseller and stationer in the country." The case of *Eastman* v. *City of Chicago,* 79 Ill. 178, relied upon by the petitioner, does not militate against the foregoing cases, for the reason that in that case it appeared that the dealer was generally engaged in the business of selling legal blanks, stereoscopes, engravings, paintings, and children's toys and games and, incidental thereto, had for sale a few rare and old imported books which were rather to be classed with paintings or works of art than as second-hand books, in the sense in which that term is usually understood; while in the case at bar it is stipulated that the

petitioner is engaged in the business of buying, selling, and exchanging second-hand books, not as a mere incident to some other occupation, but as his principal business.

It is needless to pursue the subject further than to say that if the construction to be placed upon the phrase ''goods, wares and merchandise,'' as contended by the petitioner, were to be adopted, dealers in books would be generally exempted from taxation under the common form of assessment of ''goods,'' or of ''goods, wares and merchandise'' contained in their stores.

[2] Appellant's next contention is that the business of dealing in second-hand books is not such a business as requires or should be subjected to regulation under the police powers of the municipality, and hence that the requirement that such persons shall procure permits from the board of police commissioners before engaging in such business is an unwarranted and illegal regulation. This contention is also, in our opinion, without merit. Second-hand goods, wares, and merchandise have always been deemed the proper subjects of police regulation by municipalities (see ''Constitutional Law,'' 8 Cyc. 875, and cases cited); and the grant by the constitution in article XI, section 11 thereof, to municipalities ''to make and enforce all such local, police, sanitary and other regulations as are not in conflict with general laws,'' is very broad and liberal. The business of buying and selling second-hand books cannot be differentiated from the business of buying and selling other forms of second-hand personal property which, being movable, valuable, and passing easily from hand to hand, are often made the subject of purloining and petit larceny and of disposal in second-hand places of business. Such places of business have, therefore, been made the proper subjects of police inspection and regulation. It is a matter of common knowledge that public libraries all over the country are continually subjected to the depletion of their shelves through loss of books which find their destination in second-hand stores, and that precautions against such loss may be observed in the equipment and administration of every well-appointed public library in the land. It cannot be said, therefore, that the requirement in section 7 of the charter, above quoted, that ''the chief of police shall possess powers of general inspection, supervision and control over all . . . dealers in second-hand merchan-

dise'' and that ''all persons engaged in said callings must first procure permits from the commission,'' is an unreasonable form of regulation. This subject might be pursued into the domain of health regulation, since it may be said to be also a matter of common knowledge that books, magazines, and like publications which pass through many hands, and perchance through many households, have frequently been found the prolific carriers of infectious diseases. For both of the foregoing reasons we hold that the subjection of dealers in second-hand books to police regulation to the extent of requiring such persons to procure permits as a prerequisite to engaging in the business of selling such second-hand merchandise is a proper and reasonable regulation.

[3] The petitioner's next contention is that the investment of the board of police commissioners with the general and unqualified power to grant or refuse permits to dealers in second-hand merchandise, as contained in the provisions of the charter above quoted, is unconstitutional as an attempt to confer arbitrary power upon that body to grant or refuse permits at their whim or pleasure. The best answer to that contention is to be found in Dillon on Municipal Corporations (fifth edition), page 937, wherein the learned author says: ''Many cases are to be found sustaining ordinances prohibiting acts, or even the following of trades or occupations, without procuring permits which may be issued at the discretion of the council, mayor, or some other city officer or department, and the fact that the dispensing power was apparently conferred without restraint or qualification has been regarded as arising merely from the difficulty of defining in advance upon what conditions the permits shall be given or the dispensing power exercised. It has been said that it is not to be assumed that the council or officer, in exercising the dispensing power, will act arbitrarily, or otherwise than in the exercise of a sound discretion.''

The appellant, however, insists that this court has decided in the case of *In re Dart*, 172 Cal. 47, [Ann Cas. 1917D, 1127, L. R. A. 1916D, 905, 155 Pac. 63], that the grant of arbitrary power to municipal boards or officials to grant or refuse permits is void. It is to be noted, however, that whatever was said in that case with respect to the grant of such powers had reference to the facts of that particular case; and that this court, in the case of *Gaylord* v. *City of Pasa-*

*dena,* 175 Cal. 433, [166 Pac. 348] pointed out that the Dart case dealt with the control of charitable institutions and charities, and that the decision in that case went not alone to the unreasonable and arbitrary grant of power conferred by ordinance upon a charity commission, but to the fundamental proposition that the city council of Los Angeles had empowered this board to do acts which the city council itself, the source of power, could not legally do. In both of the foregoing cases the earlier decisions of this court are cited and distinguished as having relation to things which in their nature are, or may be, injurious to public health, safety, comfort, or welfare. The cases of *Ex parte Fiske,* 72 Cal. 127, [13 Pac. 310], and *In re Flaherty,* 105 Cal. 558, [27 L. R. A. 529, 38 Pac. 981], are referred to particularly in the concurring opinion of Mr. Justice Shaw, as upholding the view that as to those kinds of occupations or businesses which are the proper subjects of police surveillance and regulation, the delegation of power to municipal boards or officials to grant or refuse permits will be sustained. In *Gaylord* v. *City of Pasadena, supra,* the court quotes approvingly from the case of *In re Flaherty, supra,* these words: "Laws are not made upon the theory of the total depravity of those who are elected to administer them; and the presumption is that municipal officers will not use these small powers villainously or for purposes of oppression or mischief." If this petitioner had applied for a permit under the requirement of the section of the charter above quoted, and been either whimsically or arbitrarily refused such permit, he might then, as is shown in *Gaylord* v. *City of Pasadena, supra,* have had recourse to the courts for relief from such unjust and arbitrary action.

The appellant's final contention, that second-hand book dealers ought not now to be required to obtain permits and pay licenses because they have not heretofore been required to do so during the years that have passed since the charter of San Francisco went into effect, is not worthy of serious consideration.

Writ dismissed and petitioner remanded.

Richards, J., *pro tem.,* Shaw, C. J., Lennon, J., Waste, J., Shurtleff, J., and Sloane, J., concurred.

WILBUR, J., Concurring.—I concur in the judgment. The sole question in this case is the validity of the ordinance imposing a license tax upon the petitioner's business. It is conceded that under the general power of taxation this might be done. It is contended, however, that, under the provisions of the charter of San Francisco, that power is expressly taken away from the board of supervisors. This question turns upon the provisions of the charter concerning a permit. If the business is one requiring a permit it is taxable; if not, it cannot be taxed. As shown in the main opinion, the business in question is one for which, under the provisions of the charter, a permit may be required. It follows that the business is properly subject to a license tax. Whether or not the provisions of the charter or ordinances passed in pursuance thereof requiring a permit are valid as an exercise of the regulatory power over such business vested by the constitution and charter in the city government is not involved in this case. The use of the term "permit" in the charter is of no significance in the case at bar except in so far as it describes the character of business he is conducting. What is said in the main opinion concerning the propriety of requiring a permit and vesting the power to grant or withhold the same in the sound discretion of some municipal officer or body is immaterial. It is for that reason that I do not concur in the main opinion. The rules with reference to the authority of municipalities to grant or withhold permits are thoroughly established in this state and need not be discussed. I do not think that under these rules the arbitrary power to grant or withhold permits for the conduct of the business of a second-hand bookstore can exist. As the point is not involved in the case, and the law is well settled, I deem it unnecessary to say more upon this subject, and have only said this much in order to indicate my reason for not fully concurring in the main opinion.