[Crim. No. 1653. Second Appellate District, Division Two.—July 6, 1928.]

In the Matter of the Application of ORVILLE GRAHAM for a Writ of Habeas Corpus.

Charles W. Cradick for Petitioner.

Jess E. Stephens, City Attorney, James L. Ronnow and D. M. Kitzmiller, Deputies City Attorney, for Respondent.

CRAIG, J.—The petitioner is under sentence of imprisonment for having violated certain provisions of an ordinance of the city of Los Angeles. He asks to be discharged on *habeas corpus,* claiming that the ordinance is void. The provisions of the ordinance here in question are the early part of section 5, subdivision (a) of section 5, and the first paragraph of section 12. The first part of section 5 reads: "Permits may be issued as provided in section 12 hereof to the owners of the vehicles herein defined allowing any such vehicles while awaiting employment to stand at certain designated places upon the streets of the city of Los Angeles; . . . "

Subdivision (a) provides: "It shall be unlawful for the owner or driver of any of the vehicles herein defined to stand or to cause or to permit such vehicles to stand while awaiting employment at any place other than a stand designated by the Board of Public Utilities and Transportation and assigned to the owner of said vehicle."

The first part of section 12 is as follows: "The board in its discretion shall have the power to grant or deny any and all of the permits mentioned in this ordinance. . . . "

The only contention of the petitioner which requires our attention is the claim that these provisions concerning permits are void as being partial and oppressive and not general in their operation, and because of them, it is asserted, an arbitrary power is placed in the hands of the police commission, and that they violate certain constitutional provisions, not very definitely specified, but apparently those protecting him from a denial of equal protection of the law and the privileges of citizens.

It is said that the petitioner is not in a position to challenge the constitutionality of the ordinance under whose provisions he is prosecuted on the ground that it is discriminatory, because there is no showing that he has been the subject of discrimination. There is nothing to indicate that any permit had been given to anyone else to stand at the place where he is charged with having caused his taxicab to stand. Hence it seems clear that the petitioner is in no position to say that the law is discriminatory unless it is sufficient to render a law void upon the ground that discrimination *may* occur through its administration. This,

petitioner asserts, is the law. He insists that if a law allows an opportunity for the exercise of discrimination by municipal authorities in the regulation of a lawful business it is *per se* void and unconstitutional, and he cites a long list of cases from many jurisdictions. However, a careful examination of these and other authorities reveals that with few exceptions the doctrine expounded by them is not broad enough in its scope to support the principle asserted to be the law. This is especially true of the decisions from this jurisdiction. ■ Here the rule has been announced in positive terms to be that in these occupations and businesses which are the proper subject of police surveillance and regulation the delegation of power, even though involving discretion to municipal boards or officers to grant and refuse permits, will be sustained. This is upon the theory, as stated by our supreme court in *In re Flaherty,* 105 Cal. 558 [27 L. R. A. 529, 38 Pac. 981], that: "Laws are not made upon the theory of the total depravity of those who are elected to administer them; and the presumption is that municipal officers will not use these small powers villainously or for purposes of oppression or mischief." The authority of this decision is augmented by the fact that it has repeatedly been referred to with approval by other cases, among which are *In re Dart,* 172 Cal. 47 [Ann. Cas. 1917D, 1127, L. R. A. 1916D, 905, 155 Pac. 63]; *Gaylord* v. *Pasadena,* 175 Cal. 433 [166 Pac. 348]; *In re Holmes,* 187 Cal. 640 [203 Pac. 398]. If the petitioner had applied for a permit under the section of the ordinance in question, and had his application been arbitrarily or capriciously refused, he would then have been entitled to secure relief from such unjust action through the courts. (*Gaylord* v. *Pasadena, supra; In re Holmes, supra.*)

But, if there is any doubt upon the merit of this preliminary objection interposed by respondents, regardless of any conflict which may exist in other jurisdictions, the cases named above and others of similar import in this state have determined the merit of the main question presented and adversely to the contention of petitioner. In cases which have to do with things which may be dangerous to public health, comfort or welfare enactments have uniformly been upheld regulating the conduct of individuals as to whom no natural, inviolate right was possessed even though

special privileges might result to particular persons. On the other hand, in instances where one possessing an inherent right to do a lawful and innocent act has been limited in the exercise of that right by the creation of an arbitrary power in an officer or board the ordinance has been held unlawful, discriminatory and void. This distinction is well pointed out in *In re Flaherty, supra,* where many other cases are reviewed, and to which attention is called in a concurring opinion in *In re Dart, supra.*

Bearing in mind and applying these distinctions and principles, the issue here presented is not difficult of decision. Public streets and highways are made for travel and the convenience and enjoyment of the citizens. The petitioner has the same rights to their use as others, but he is demanding a privilege which might greatly inconvenience the general public and impair its safety. No one has a natural right to conduct a business involving the exclusion of others from a particular area in a public street; such an occupation would ordinarily constitute a nuisance, but the wants and pleasures of the public suggest that although in a broad sense an interference with public comfort and convenience may result, the maintenance of taxicab stands should be allowed under special conditions and regulations. It cannot be doubted that the city council has the authority to abolish taxicab stands from the streets. As was said in *Holmes* v. *Railroad Commission,* 197 Cal. 627 [242 Pac. 486]: "The reason for the rule which authorizes the state to prohibit the private use of the highways by such carriers is not that they are common carriers. It is that they are making a private use of the public highways, which are owned and paid for by the public and are open alike to all persons." This applies to taxicab stands as well as to any other instance in which an individual is making a private use of public highways, a use which would be subversive of the rights of other members of the public.

It is too obvious to require extended discussion that if such a privilege is to be granted at all, it must be only under proper regulation. If petitioner's theory were correct, that if any citizen is entitled to a taxicab stand all others have the same right, it is easy to conceive that dozens of taxicab drivers might see fit to claim a stand on the same corner, and thus obstruct traffic, bring about great

public inconvenience, and seriously endanger property and persons.

■ It is obvious that this subject, like many others, is one which no general enactment could possibly regulate efficiently. Other matters similar in character which have been held properly confided to the discretion of an administrative board or officer are where, on the public street or on private property, glass, rubbish, etc., might be deposited, *Ex parte Casinello*, 62 Cal. 538; in what wooden buildings within certain fire limits repairs might be made, *Ex parte Fiske*, 72 Cal. 125 [13 Pac. 310], the regulation of noises on the traveled streets, *In re Flaherty, supra;* operation of motor vehicles on public highways, *Holmes* v. *Railroad Commission, supra.* See, also, the following cases involving the same general principles: *In re Guerrero*, 69 Cal. 88 [10 Pac. 261]; *Ex parte Frazer*, 54 Cal. 94; *Ex parte Moynier*, 65 Cal. 33 [2 Pac. 728]; *Ex parte Christensen*, 85 Cal. 208 [24 Pac. 747]; *Ex parte Tuttle*, 91 Cal. 589 [27 Pac. 933]. Dozens of authorities of similar import might be cited from other jurisdictions, many of which are enumerated in *In re Flaherty, supra.*

It is not necessary to discuss each decision cited by petitioner in which a law has been held unconstitutional upon the grounds here under consideration. In so far as those of California courts mentioned are concerned, without exception they uphold inherent inviolate property rights only. The same is true of his citations of decisions of the United States supreme court. Especial reliance is placed on *Yick Wo* v. *Hopkins*, 118 U. S. 374 [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, see, also, Rose's U. S. Notes], but the limitation of the authority of that decision has been determined by our supreme court in *Ex parte Fiske, supra*, in which it was said: ''It is evident from this language that the decision rested mainly upon the admitted discrimination against a class of persons in the *public administration* of the ordinance. Indeed, the admitted facts, which the court considered, showed that the intent of the ordinance was to exclude Chinamen from a business which should be open to all persons, as clearly as if that intent had been boldly written on its face. The decision, therefore, *as an authority*, goes no further than to hold that, under a state of facts similar in character to the facts of that case, an ordinance

similar in character to the one there passed upon would be invalid. But there are no such facts in the case at bar." (Italics as quoted.)

█ Nor do they exist here. Instead, the record is such that the language in *Buck* v. *Kuykendall*, 267 U. S. 307 [69 L. Ed. 623, 45 Sup. Ct. Rep. 324, 38 A. L. R. 286], applies. The rule there stated is: " . . . A citizen may have, under the fourteenth amendment, the right to travel and transport his property upon them (the public highways) by auto vehicle, but he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause."

█ Petitioner attacks the ordinance in question upon other grounds. We do not regard it as possessing merit, and since it is stated for the first time in his closing brief it is unnecessary to discuss the objection presented.

The writ is discharged, and the petitioner remanded to custody.

WORKS, P. J., Concurring.—I concur in the judgment and, with one or two exceptions, in everything that is said in the opinion of Justice Craig.

I think it unnecessary to say in disposing of the proceeding, as it is said in the opinion, that in certain specified cases "enactments have uniformly been upheld regulating the conduct of individuals as to whom no natural, inviolate right was possessed even though special privileges might result to particular persons." I take this language to mean, reducing it to the terms of the present situation, that the public authorities, in conferring privileges in streets, may discriminate between persons belonging to the same class, and such a pronouncement seems to me unnecessary for the reason that petitioner can make no claim that he was subjected to such a discrimination. The petition merely alleges that petitioner is under confinement by reason of his having been found guilty of a violation of section 5a of the ordinance referred to in the foregoing opinion, which we construe, under the arguments contained in the briefs, as a reference to subdivision (a) of section 5, for there is no section 5a contained in the ordinance. There is no showing

whatever in the petition that in causing a vehicle to stand or in permitting it to stand "while awaiting employment, at any [some] place other than a stand designated by the Board . . . and assigned to the owner of said vehicle," the offense denounced by subdivision (a), petitioner was encroaching upon an area which had been assigned to the owner of vehicles other than that owned or driven by him. The petition must be construed, then, as alleging that he was found guilty and was imprisoned because he stood his cab in a space which had been assigned as a stand to no owner of vehicles. Plainly, under such circumstances, petitioner could have been subjected to no discrimination, as all other cab drivers, if standing their cabs in the same place occupied by his, would have been subjected to pains the same as those under which he suffers.

I think, for the reasons stated in the last preceding paragraph, it is unnecessary to a disposition of the proceeding to include in the foregoing opinion the following matter: "If petitioner's theory were correct, that if any citizen is entitled to a taxicab stand all others have the same right, it is easy to conceive that dozens of taxicab drivers might see fit to claim a stand on the same corner, and thus obstruct traffic, bring about great public inconvenience, and seriously endanger property and persons." For the reasons given above we are not now required to say whether or not all owners of taxicabs have the right upon some principle of rotation, for instance, or upon some other principle which may be imagined, to occupy what might be conceded as immeasurably the best and the greatest revenue producing stand in the city of Los Angeles. Therefore, I feel it unnecessary for the present to commit myself upon the question.

Having thus limited my concurrence in the foregoing opinion, I think it not inappropriate to say something, in addition to what Justice Craig has said, upon the point made by petitioner that the ordinance is unconstitutional because it confers upon the petition granting body powers that are susceptible of a discriminatory exercise. I think petitioner is in no position to raise such a question. It would be strange, as the petition must be construed as showing no invasion of an established stand by petitioner, if he could contend that the petition granting body might act

arbitrarily in the future in granting applications for the establishment of stands. Petitioner's arrest and imprisonment resulted, under a proper construction of his petition, from his placing his cab at a place outside of spaces which had *already been designated as stands.* There is no contention that the petition granting body has not fairly and justly discharged its duty in locating these stands. As the power granted by the ordinance is surely susceptible of a just exercise we must presume, under the well-known rule to that effect, that official duty has been properly performed and that therefore the established stands from which petitioner had strayed at the time of his arrest were judiciously and indiscriminatorily located. Under the circumstances surrounding his arrest, I think petitioner must look to the occurrences of the past and cannot be heard to urge the point, whether or not it would be good in any case, that the power granted by the ordinance possibly might be unfairly exercised in the future. In truth, I conclude that the petition fails to state facts sufficient to entitle petitioner to the relief he asks.

THOMPSON (IRA F.), J., Concurring.—I concur in the judgment solely because I am of the opinion that petitioner fails to allege a situation showing that he has been discriminated against, or showing that the ordinance is susceptible of a discriminatory exercise. I am so convinced, however, that even as the Creator "maketh his sun to rise on the evil and on the good, and sendeth rain on the just and the unjust," even so must the laws and ordinances be made to operate alike upon the elect and the nonelect, that I cannot assent to language intimating that arbitrary discrimination is permissible when the subject of legislation is not a natural right.