[Civ. No. 21108.   First Dist., Div. One.   Nov. 19, 1963.]

BEN ISCOFF, Plaintiff and Appellant, v. POLICE COM-
MISSION OF THE CITY AND COUNTY OF SAN
FRANCISCO et al., Defendants and Respondents.

Lewis & Stein and Marvin E. Lewis for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and Robert A. Kenealey, Deputy City Attorney, for Defendants and Respondents.

SULLIVAN, J.—Ben Iscoff appeals from a judgment denying his petition for a writ of mandate and discharging an alternative writ of mandate directing respondents Police Commission and Board of Permit Appeals of the City and County of San Francisco and the remaining respondents who are members respectively of said commission and board[1] to approve appellant's application for a transfer of his pawnbroker's license.

We set forth the essential background facts. Appellant is a pawnbroker licensed to do business at 195 Third Street in San Francisco. On April 5, 1962, he applied to the chief of police for a transfer of his permit to 2567 Mission Street in San Francisco. We note that appellant incorrectly states in his petition below and in his briefs here that such application was made to the police commission. The record before us, including the original application in question, is clearly to the contrary and shows that the application was made as we have stated.[2] On April 24, 1962, a hearing was held on the application before Deputy Chief Alfred J. Nelder and at the conclusion thereof the application was denied.

On or about May 1, 1962, appellant filed an appeal from this decision with respondent board of permit appeals. After a hearing the board upheld the action of the chief of police and ordered that appellant's permit be denied. The above board thereafter granted appellant a rehearing and upon conclusion of the same, on July 25, 1962, again sustained the action of the chief of police and again ordered denial of appellant's application.

On July 26, 1962, appellant filed in the court below a petition for a writ of mandate. The alternative writ issued and respondents filed their return and answer. On August 31, 1962, the court, finding that there was substantial evidence

---

[1]The remaining respondents were sued below both individually and as members of their respective commission or board.

[2]Although the police commission and the chief of police are components of the police department, they are not in themselves identical. (San Francisco Charter, § 35.)

before the board of permit appeals, rendered judgment denying the petition for the writ of mandate and discharging the alternative writ. This appeal followed.

Appellant contends here as he did in the court below (1) that the denial of his application was based on an improper exercise of police power and was therefore invalid; (2) that the ordinance regulating the granting or denial of permits lacks sufficient standards to guide administrative action and is therefore unconstitutional; (3) that the denial of appellant's application constituted a denial of equal protection of the law and of due process of law; (4) that the denial of said application violated section 1279 of the San Francisco Municipal Code and was therefore invalid; and (5) that the hearings before the chief of police and the board of permit appeals violated due process of law and the denial of appellant's application was based on insufficient evidence and constituted an abuse of discretion. We will consider these points in the order presented.

At the outset it must be noted that authority for the granting or revocation of permits such as that here involved is found in the San Francisco Charter and certain implementing ordinances. Initially section 24 of the charter empowers the board of supervisors to regulate the issuance of such permits and provides for an appeal to the board of permit appeals in the event of a denial of an application therefor. Said section also provides that the chief of police shall have the power to examine the books and premises of, among others, pawn brokers and secondhand dealers.[3] Section 39 of said charter provides for the creation of the above board of

---

[3]Section 24 of the charter provides in relevant part: "The board of supervisors shall regulate, by ordinance, the issuance and revocation of licenses and permits . . . for the operation of businesses or privileges which affect the health, . . . crime, policing, welfare . . . of . . . the city and county, . . .

". . . Said ordinance shall also specify which department shall make the necessary investigations and inspections and issue or deny and may revoke the permits and licenses therefor. The chief of police in the performance of police duties shall have power to examine at any time the books and the premises of pawnbrokers, peddlers, junk and secondhand dealers, auctioneers and other businesses designated by the board of supervisors, . . .

"Permits and licenses shall be issued by the departments as designated by ordinance, only after formal application for such permit or license. . . . If any application for a permit or license is denied by the department authorized to issue same, the applicant may appeal to the board of permit appeals. . . ."

permit appeals and delineates its appellate function.[4] Pursuant to section 1 of article 1 of part III of the San Francisco Municipal Code, authority to issue permits for pawnbroker establishments is conferred upon the police department.[5]

Section 35.6 of the charter provides: "The chief of police may refuse to issue any permit that is subject to police department investigation and issuance, if it shall appear that the character of the business or the applicant requesting such permit does not warrant the issuance thereof, or he may revoke any such permit as soon as it shall appear that the business or calling of the person to whom it was granted is conducted in a disorderly or improper manner, or that the place in which the business is conducted or maintained is not a proper or suitable place in which to conduct or maintain such business or calling."

Section 26 of article 1 of part III of the Municipal Code provides: "In the granting or denying of any permit, or the revoking or the refusing to revoke any permit, the granting or revoking power may take into consideration the effect of the proposed business or calling upon surrounding property and upon its residents, and inhabitants thereof; and in granting or denying said permit, or revoking or refusing to revoke a permit, may exercise its sound discretion as to

---

[4]Section 39 of the charter provides in relevant part: "The mayor shall appoint five qualified electors, other than city and county officials or employees, for terms of four years, to constitute a board of permit appeals. . . .

"Any applicant for a permit or license who is denied such permit or license by the department authorized to issue same, or whose license or permit is ordered revoked by any department, or any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused."

[5]Section 1 provides in relevant part: "Permits shall be issued for the location and conduct of the businesses, enterprises or activities, enumerated hereinafter by the department or office authorized by Sections 1 and 2 of this Article to issue each such class of permit ... : (37) For the maintenance and operation of pawnbroker establishments—by the Police Department."

whether said permit should be granted, transferred, denied or revoked.''

With these charter provisions and ordinances in mind, we proceed to the controversy at hand.[6] Appellant first assails the allegedly improper exercise of the police power. No claim is made that the subject business does not fall within the compass of such power. Nor do we think such a claim could be made. The regulation of pawnbrokers and of dealers in secondhand goods has generally been deemed a proper exercise of the police power and municipal regulations of such businesses upheld, absent any preemption of the field by the state. (*In re Holmes* (1921) 187 Cal. 640, 645 [203 P. 398] ; 7 McQuillin, Municipal Corporations (3d ed.) § 24.335, pp. 231-234.) Furthermore, the courts have sustained delegation of power to municipal boards or officers to grant or refuse permits to businesses which are the proper subjects of police surveillance and regulation and have declared that in the exercise of said power, such authorities are presumed to have acted not arbitrarily but in the exercise of a sound discretion. (*In re Holmes, supra,* 187 Cal. 640, 646-647; *In re Petersen* (1958) 51 Cal.2d 177, 185 [331 P.2d 24, 77 A.L.R.2d 1291], appeal denied 360 U.S. 314 [79 S.Ct. 1294, 3 L.Ed.2d 1259].)

Appellant's first attack does not reach these principles. Instead, appellant charges that the denial of his application ''was based on considerations of private rather than public interest,'' that this constituted an improper exercise of the police power and that accordingly the denial was invalid. He cites *Weiner* v. *Borough of Stratford* (1954) 15 N.J. 295 [104 A.2d 659] in support of the proposition that the police power must be exercised ''in the public interest'' and not for ''the protection of private economic interests.'' Appellant's thesis is sound but his difficulty in the instant case is in proving that the chief of police and the board of

---

[6]While the provisions of the San Francisco Charter, being contained in the official statutes (Stats. 1931, pp. 3001-3002; Stats. 1937, pp. 2803-2804; Stats. 1943, p. 3111) were presumably considered by the trial court, the record does not disclose whether the pertinent ordinances were exhibits before the court. On this point the parties raise no objection before us but on the contrary by their discussions of such ordinances here appear to have considered them a proper part of the instant record. Quite apart from this, since the ordinances were before the chief of police and the board of permit appeals, we may take judicial notice of them here. (*City & County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236, 242-243 fn. 4 [1 Cal.Rptr. 158, 347 P.2d 294]; *Greif* v. *Dullea* (1944) 66 Cal.App.2d 986, 998 [153 P.2d 581].)

permit appeals acted arbitrarily and not in the public interest. In short, appellant's first contention boils down to an issue of the sufficiency of evidence which, as we have already pointed out and as we discuss hereafter, is embraced within another contention of appellant.

We therefore turn to appellant's second contention that the ordinances regulating the granting or denial of permits like the one here involved lack sufficient standards. Actually appellant urges in his opening brief that "the ordinance" (i.e., in the singular) is thus defective although he does not identify in his ensuing argument the ordinance to which he refers. However, considering appellant's oral argument and his briefs as a whole, we think that his contention fairly construed embraces all pertinent ordinances. Clearly appellant's position here is that there is an absence of adequate standards anywhere.

Appellant rests his argument on generous quotations from McQuillin on Municipal Corporations (3d ed., vol. 9, § 26.62, pp. 136-137; § 26.64, pp. 138-140) stating in substance that while powers as to permits or licenses are delegable to municipal officers or boards, they must be made subject to prescribed standards and that arbitrary or absolute discretion to grant or deny licenses or permits cannot be vested in such officials or boards. A number of cases, principally from other jurisdictions, are cited as supportive of this general rule. However we observe that in a closely following section the same authority points out that the character of the business involved has an effect on the foregoing general rule. In this regard it is stated that a distinction is made between a dangerous or harmful and an innocuous business and that in the former instance broad discretion may be vested in boards or officials as long as there is some standard precluding arbitrary action. According to this qualification of the general principle it is not necessary to prescribe a *specific* rule or standard where the exercise of a broad discretion relates to occupations or businesses properly subject to police surveillance. (9 McQuillin, *op. cit.*, § 26.66 pp. 146-148.)

Thus the broad statement of principle which appellant urges upon us here does not obtain under all circumstances. Indeed we find that the California Supreme Court in considering the necessity for specific standards in ordinances has recognized and applied those qualifying principles above mentioned from which there evolves an exception to the general rule. These decisions make it unnecessary for us to discuss appellant's cases cited in support of the general rule.

In the case *In re Petersen, supra,* 51 Cal.2d 177, the petitioner in a habeas corpus proceeding challenged the constitutionality of ordinances of the City and County of San Francisco granting the chief of police discretion to designate exclusive taxicab stands on public streets on the ground, *inter alia,* that the provision in question "fails to prescribe any standards to guide him in that respect." (P. 182.) The court rejected such contention. We quote from *Petersen*: "With respect to the question of standards for administrative action the general rule is that a legislative body cannot confer unlimited power upon an officer without designating standards to guide his action. (*Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 641-642 [91 P.2d 577].) However, there are limitations on the general rule which are applicable to the case before us.

"The granting of discretionary power, not restricted by specific standards, to confer or deny licenses or permits has been upheld in a variety of situations where the licensed activity, because of its dangerous or objectionable character, might be regulated or restricted to certain localities. [Citing a number of cases including *In re Holmes, supra,* 187 Cal. 640, 646-647.] This limitation on the general rule was applied in the case of *In re Graham, supra,* 93 Cal.App. 88, 91 [269 P. 183], in sustaining a discretionary power, not governed by any standards, to grant and refuse permits to occupy taxicabs stands. Similarly, an earlier form of the ordinance attacked here was upheld in *People* v. *Galena, supra,* 24 Cal. App.2d Supp. 770, 779 et seq. [70 P.2d 724].

"The absence of express standards in such situations does not mean that the licensing agency may act arbitrarily or oppressively; it is presumed that the agency will duly perform its public duty, but an abuse may be shown and relief obtained in the courts. [Citations.]" (51 Cal.2d at pp. 184-185.)

In the case of *In re Holmes, supra,* 187 Cal. 640, the petitioner in a habeas corpus proceeding contended that the grant of power to the police commission[7] of San Francisco to grant or refuse permits to dealers in secondhand merchandise was unconstitutional as an attempt to confer arbitrary

---

[7]*Holmes* arose under an earlier charter of San Francisco expressly conferring such power on the board of police commissioners. *Petersen* and the case before us arose under the charter ratified by the People on March 26, 1931, ratified by the Legislature April 13, 1931, and in effect January 8, 1932.

power on that body to so act at their whim or pleasure. Rejecting petitioner's contention the court quoted from Dillon on Municipal Corporations (5th ed., p. 937) as follows: "... the fact that the dispensing power was apparently conferred without restraint or qualification has been regarded as arising merely from the difficulty of defining in advance upon what conditions the permits shall be given or the dispensing power exercised. It has been said that it is not to be assumed that the council or officer, in exercising the dispensing power, will act arbitrarily, or otherwise than in the exercise of a sound discretion." (P. 646.) The court also referred to *Gaylord* v. *City of Pasadena* (1917) 175 Cal. 433 [166 P. 348] and certain cases therein cited "as upholding the view that as to those kinds of occupations or businesses which are the proper subjects of police surveillance and regulation, the delegation of power to municipal boards or officials to grant or refuse permits will be sustained." (P. 647.)

Appellant's contention in the case before us echoes the contentions made in *Petersen* and *Holmes* and is convincingly answered by those decisions which, in our view, are controlling here. In the instant case, section 24 of the San Francisco Charter now in effect directs the regulation by ordinance of the issuance and revocation of licenses and permits for the operation of businesses affecting the health, crime, policing and welfare of the city. As we have already pointed out, appellant's business answers such description. (7 McQuillin, *op. cit.*, § 24.335, pp. 231-234.) The chief of police is invested with the power to issue or refuse permits for the business here in question (San Francisco Municipal Code, pt. III, art. 1, § 1) along with the power to inspect its books and premises (San Francisco Charter, § 24) and to refuse such permit if the character of the business or of the applicant does not warrant its issuance. (San Francisco Charter, § 35.6.)[8] The chief of police in granting, refusing or revoking a permit may consider the effect of the proposed business upon the surrounding property and its residents and in taking such action may exercise his sound discretion.

[8]However we disagree with respondents' assertion that section 35.6 of the charter authorizes the chief of police to refuse a permit "if the place where it is proposed to carry on the business 'is not a proper or suitable place in which to conduct or maintain such business. ...' " That portion of section 35.6 quoted by respondent (enclosed by single quotation marks above) expresses a condition bearing upon the *revocation* not the issuance of the permit. Nor is there any language referring to the place where "it is proposed to carry on the business."

(San Francisco Municipal Code, pt. III, art. 1, § 26.) Sound discretion in this instance, as with that contemplated by law or conferred on the courts, is not a capricious or arbitrary one. (Cf. *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424; *Kalmus* v. *Kalmus* (1951) 103 Cal.App.2d 405, 415 [230 P.2d 57], cert. denied, 342 U.S. 903 [72 S.Ct. 292, 96 L.Ed. 676].) In short, the foregoing sections of the city's charter and ordinances fashion and provide an overall standard governing and guiding the chief of police and prescribing that the exercise of his permit power must not be arbitrary but rather directed to the promotion of the public interest. Appellant argues that this constitutes only a general and therefore inadequate standard and that specific standards, even of a minimum nature, are here nonexistent. The simple answer is that in the regulation of the business here involved, specific standards are not necessary. (*In re Petersen, supra,* 51 Cal.2d 177; *In re Holmes, supra,* 187 Cal. 640; 9 McQuillin, *op. cit.,* § 26.66.) We therefore hold that the overall standard alluded to above is adequate and that the ordinances here applicable do not offend against constitutional principles.

Furthermore in the instant case the standard which governs and guides the board of permit appeals is precisely the same as that which governs and guides the chief of police at the primary administrative level and is therefore adequate and lawful for such board in the exercise of its appellate function. (*City & County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236, 250, 252 [1 Cal.Rptr. 158, 347 P.2d 294]; *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 313-314 [144 P.2d 4].)

■ Appellant next contends that he has been denied equal protection of the law and due process of law. This claim is based solely on an assertion that shortly after the respondent board of permit appeals denied appellant's application, it granted permits to seven charity-operated stores selling secondhand goods, at the same time overruling police department action denying such permits. Appellant proffers "evidence" of this alleged discrimination by attaching to his opening brief a copy of a newspaper account of the above incident. It is almost unnecessary to point out that these were independent and unrelated proceedings having nothing to do with the case now subject to review. Neither the above newspaper article nor the events therein related are part of the instant record. Appellant has not directed our attention to anything in this record substantiating his above claim

that he has been denied equal protection of the law or due process of law. ■ It is elementary that one cannot show error by comparing the results of diverse proceedings. Appellant to prevail at all must do so on the merits of his own case.

■ We next take up appellant's claim that the denial of his application was invalid because it was in violation of section 1279 of part II of chapter VIII of the San Francisco Municipal Code.

Section 1276.1, subdivision (a), of said part and chapter defines the term "pawnbroker" and section 1276.1, subdivision (c), applies the provisions and prohibitions in sections 1276 to 1280 to pawnbrokers.[9]

Section 1279 of said part and chapter provides: "Before any person shall engage in the business of dealing in any second-hand goods, wares, merchandise, or articles of any description, either exclusively, or in conjunction with some other business, he must make application to the *Police Commission* for a permit therefor, which said *Commission* may, by resolution, grant permission to said applicant to receive a license from the Tax Collector upon the payment of the license fee required; provided, however, that said *Commission* shall have the power to revoke said permission upon good cause being shown; provided, that the *Police Commission* shall not issue any permit and the Tax Collector shall not issue any license to any person, firm or corporation to conduct the business of dealing in second-hand furniture and household goods within a distance of two hundred (200) feet from the front line of any church or school, or within one hundred (100) feet of the property line of any church or school; provided, that such restrictions shall not apply to any second-hand furniture and household goods business now being conducted within such distances; provided further, that no other restrictions as to the location of the place of business operated or to be operated by any person, firm or corporation desiring to engage in or continue in the business of dealing in second-hand furniture and household goods shall be con-

---

[9]Section 1276.1, subdivision (a), in relevant part provides: "The term 'pawnbroker' is hereby defined to be any person, firm, corporation, copartnership or association who or which loans money on the delivery or deposit of personal property as security for the repayment of said loan, ..."

Section 1276.1, subdivision (c), provides: "All of the provisions and prohibitions contained in sections 1276 to 1280 of Chapter VIII of the San Francisco Municipal Code shall apply to pawnbrokers as defined in this section."

sidered by the *Police Commission* or the Tax Collector." (Emphasis added.)

The argument which appellant constructs on the foregoing sections runs as follows: The location at 2567 Mission Street to which appellant sought to transfer his pawnbroker's permit was zoned for commercial use and therefore appellant's business was authorized and acceptable on that ground. The specific provisions of section 1279, so it is argued, applying to pawnbrokers and being paramount to any general language of other ordinances taken into consideration by the *chief of police* and the board of permit appeals, prescribe the locational requirements for appellant's business and in the final proviso thereof declares that "no other restrictions as to the location . . . shall be considered by the *Police Commission* or the Tax Collector." (Emphasis added.) Since it appeared to the municipal authorities that appellant was of good character and his pawnshop properly conducted and further that appellant's proposed location did not fall within the restrictions of section 1279, the consideration of other restrictions was in clear violation of said section and the denial of appellant's application predicated on such other considerations was illegal and void. As a result appellant claims that he is in no different position than a barbershop or a beauty parlor.

It is interesting to note that in the course of the foregoing argument appellant refers sometimes to the chief of police and sometimes to the police commission as the primary granting power. At the beginning of this opinion we called attention to appellant's incorrect statements in his petition filed below and in his briefs here that the application was made to the police commission. It is unnecessary to repeat here that under the existing San Francisco Charter and implementing ordinances, the power with respect to the issuance, refusal and revocation of permits for businesses such as appellant's is initially vested in the chief of police. (San Francisco Charter, §§ 24, 35.6, 39; San Francisco Municipal Code, pt. III, art. 1, §§ 1, 26.)

It is also to be noted that section 1279 on which appellant relies provides for the issuance of permits by the police commission (see italicized words in section) and contains no reference at all to the chief of police. Appellant assumes that such section is an integral part of the administrative plan for the government of the city under the existing charter and that it is applicable, indeed paramount, here despite the provisions of the charter and the ordinances mentioned by us

above. Section 1279 was originally enacted in 1913 and amended in 1929. It thus antedates the present city charter which became effective in 1932. (See footnote 7, *ante*.) It is obvious to us that the section implements a plan of granting permits under an earlier charter no longer in effect. (See references to granting of permits by the police commission under the former city charter in *In re Holmes, supra,* 187 Cal. 640, 642, and *Willer* v. *Quinn* (1935) 4 Cal.App.2d 663, 665 [41 P.2d 572].)

Section 1279 purportedly provides for the issuance of permits for any business dealing in secondhand goods by the *police commission.* By virtue of the provisions of section 1276.1, subdivision (c), as appellant argues, this permit procedure is made applicable to pawnbrokers. However section 1 of article 1 of part III of the Municipal Code enacted after the present San Francisco Charter went into effect and apparently for the purpose of implementing such charter (§ 24 thereof; see footnote 3, *ante*) vests authority to issue permits for both secondhand dealers and pawnbrokers in the *police department* (subds. 7 and 37 of § 1).[10] Section 24 of the present charter invests the *chief of police* with power to investigate pawnbrokers and their establishments and section 35.6 of said charter empowers the *chief of police* to refuse to issue or to revoke permits under certain circumstances heretofore set forth by us. In addition, section 26 of article 1 of part III of the Municipal Code confers on the chief of police the authority to take into consideration the effect of the proposed business upon the surrounding territory, its residents and inhabitants. This imports a broad power to evaluate all proposed locations as opposed to the restricted power to consider locations purportedly invested in the police commission by section 1279.

The above mentioned provisions of the charter and the municipal code establish a clear and coordinated permit procedure. Nowhere in any of them is there mention made of the granting of permits by the police *commission.* It is clear to us that there is a fundamental conflict between the provisions of the charter and municipal code relating to permit procedure and the provisions of section 1279 and that such charter and code provisions subsequently enacted are irreconcilably inconsistent with the section on which appellant relies. ▮ The adoption of a charter repeals by implication ordinances

---

[10]Appellant's application made "To the Chief of Police" is for a permit "as Pawn Broker and Second Hand Dealer, General."

inconsistent therewith. (*Richards* v. *Wheeler* (1935) 10 Cal.App.2d 108, 114-115 [51 P.2d 436] ; 6 McQuillin, *op. cit.,* § 21.26, pp. 217-220.) ▮ It is also well settled that where a subsequent ordinance is so conflicting with and repugnant to an earlier one that the two cannot stand together, the later enactment is controlling and the earlier one is repealed by implication. (*Assets Reconstruction Corp.* v. *Munson* (1947) 81 Cal.App.2d 363, 368 [184 P.2d 11] ; 6 McQuillin, *op. cit.,* §§ 21.20-21.22, pp. 205-213.) ▮ We hold that section 1279 was repealed by implication and that appellant's claim, based thereon, that the denial of his application was invalid, must fall.

▮ Finally, we consider appellant's several arguments collected under his contention that the hearings before the municipal authorities violated due process of law and that the denial of his application was based on insufficient evidence and constituted an abuse of discretion. The arguments are examined in the order presented.

First appellant complains that all of the testimony before the chief of police and the board of permit appeals was unsworn. We are furnished with no citation of authority in support of this argument. Nowhere in any of the charter or municipal code provisions establishing the city's applicable permit procedure do we find a requirement that the witnesses be sworn. (Cf. *Jackson* v. *City of San Mateo* (1957) 148 Cal.App.2d 667, 669 [307 P.2d 451].)

▮ Secondly, it is claimed that the denial of the application was based on insufficient evidence. On this point the charge is made that no ''factual, objective'' evidence was offered in opposition to the application but only ''hearsay and conclusion.''

▮ It is well settled that the San Francisco Board of Permit Appeals is an administrative tribunal invested by the city's charter and implementing municipal ordinances with the power to hear and determine the entire controversy before it as to whether or not a permit should be issued, to draw its own conclusions from the conflicting evidence before it, and in the exercise of its own independent judgment to affirm or overrule the action of the official exercising permit power at the primary level. (*City & County of San Francisco* v. *Superior Court, supra,* 53 Cal.2d 236, 248; *Lynn* v. *Duckel* (1956) 46 Cal.2d 845, 848-850 [299 P.2d 236] ; *Lindell Co.* v. *Board of Permit Appeals, supra,* 23 Cal.2d 303, 313-314; *Greif* v. *Dullea* (1944) 66 Cal.App.2d 986, 998-999, 1006 [153

410

P.2d 581].) ■ The writ of mandate will not lie to control the exercise by such board of its official discretion or to alter or review action taken in the proper exercise of such discretion. (*City & County of San Francisco* v. *Superior Court, supra,* 53 Cal.2d 236, 244, 248-249; *Lindell Co.* v. *Board of Permit Appeals, supra,* 23 Cal.2d 303, 311.) ■ In a mandate proceeding, the decision of the board must be sustained if supported by substantial evidence. (*Greif* v. *Dullea, supra,* 66 Cal.App.2d 986, 1007.)

■ Essentially appellant complains of the quality of the evidence before the board and that it did not measure up to evidence normally introduced in judicial proceedings. As this court said in *Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 609 [12 Cal.Rptr. 182]: "The nature of the administrative process in this instance is such as to call for generalized statement. Its purpose is not to prove a precise fact, as in a trial in court, but to weigh the social and public advantages or disadvantages of the issuance of the permit." In upholding the use of opinion evidence before an administrative board, we stated in that case: "Appellant's first contention that the proof does not sustain the denial of the permit, but that the objections to the cocktail lounge filed by individuals induced the ruling, cannot stand. While it is true that the board relied upon opinion evidence, particularly statements of the attorneys representing the involved parties, the nature of the hearing itself evokes such presentation. . . .

"Most of the opinion testimony set forth above would neither have been admissible in a court of law nor have served as a proper basis for its decision, but such rules of admissibility of evidence do not bind administrative agencies. (Witkin, California Evidence, § 7, p. 7.) The courts have regarded the weight and sufficiency of the evidence as matters of administrative discretion and have sustained the agency's decision if 'substantial evidence' supports it. (Witkin, California Evidence, § 7, p. 9.)" (190 Cal.App.2d at pp. 608-609.)

■ In the instant case, we have concluded that there was presented to the board sufficient evidence consisting of opinions and points of view of various persons to warrant the denial of the permit. The captain of the Mission District Police Station submitted the official police inspection report indicating disapproval. He stated that the proposed business would create a police problem and produce "an influx in the neighborhood of winos and derelicts." While stating that a

canvass of the merchants in the area disclosed that 90 per cent of them opposed the permit and that this was one of the factors in his decision, he also pointed out that other factors entered into it. Pawnbrokers are mostly confined to one area in San Francisco, thereby facilitating police inspection and checking for stolen property; to spread out such businesses would make policing difficult.

Other persons appearing before the board expressed opposition which can be summarized thus: attraction of undesirable elements; downgrading of the neighborhood; presence of firearms; facilitating the disposition of stolen and "shoplifted" property; and the fact that the proposed establishment would have an attraction for juveniles.

Appellant emphasizes that since the police investigation failed to disclose anything unfavorable as to appellant's character or the conduct of his business, no police problem existed. The answer to this is that there was an anticipated police problem as indicated by the foregoing evidence. Nor does such evidence sustain appellant's claim, somewhat obliquely made, that the denial of his application rested on objections of merchants based on fear of competition. The board was entitled to consider the effect of the proposed business on the surrounding property and its inhabitants. (San Francisco Charter, § 39; Municipal Code, § 26.) The statements and opinions summarized above constituted sufficient evidence upon which the board in the exercise of its sound discretion made its order of denial. We cannot say that the board abused its discretion.[11]

Thirdly, appellant argues that the arbitrary and discriminatory administration of the permit procedure by the San Francisco Police Department is violative of due process. The record shows that the argument is without merit. The department made an investigation of the neighborhood, held a hearing, and considered the protests of objectors. (See footnote 11, post.) As we have pointed out, it was invested with these powers and with a sound but broad discretion as to the granting of the permit.

Fourthly, appellant claims that lack of due process

[11]Since the hearing before the board of permit appeals was de novo we need not detail the evidence presented at the hearing before the chief of police. Suffice it to say that it was generally the same as that subsequently presented to the board and therefore constituted sufficient evidence for the exercise of that official's sound discretion at the primary administrative level.

results from the fact that the board of permit appeals does not possess the power to subpoena witnesses. Appellant cites no authority whatsoever in support of such claim. Particular complaint is made because he was unable to subpoena members of the police department's pawnshop detail. However two members of the police department appeared, made statements relative to the anticipated police problem and answered questions of the board and appellant's then counsel. We fail to see how appellant was prejudiced.

Finally we observe that in his briefs and upon oral argument, appellant has relied heavily on the case of *Bologno* v. *O'Connell* (1959) 196 N.Y.S.2d 90 as being determinative of the case at bench. In *Bologno* the Commissioner of Licenses refused to issue a license to operate a junk yard in an area predominantly residential solely because of the *alleged harm such business would work on the area.* The single issue before the court on an appeal by the commissioner from an order directing him to issue the license was whether the denial was "within the ambit of legislatively delegated discretion." The court stated: "In the light of the history and purpose of the regulation of junk dealers it is obvious that a license is required in order to eliminate or at least curtail the readily available market for stolen property which this business affords [citations]. The clear implication, therefore, is that delegated discretion was intended, *in this instance,* to be limited to this specific subject, i.e., to the prevention of the distribution of stolen goods. " (P. 93.) In the instant case, on the contrary, power was conferred on the licensing authority by section 26 of the Municipal Code to take into consideration the effect of the proposed business on the neighborhood. Moreover the objections in the instant case were not confined to probable harm to the neighborhood but were predicated on an anticipated police problem deriving, *inter alia,* from stolen property. *Bologno* is thus distinguishable from the case at bench.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.